Edward E. Vines injured his knee while working at Scott Paper Company. Vines brought this action against Beloit Corporation, the designer of most of the equipment in the area where Vines's accident occurred; he sought damages under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and also sought damages on theories of negligence and wantonness. The trial court entered a summary judgment in favor of Beloit Corporation. Specifically, in a detailed and comprehensive order, the trial court stated that Scott Paper was a "sophisticated user of the equipment" that was involved in Vines's accident, that Scott Paper "retained significant control over the design of its plant and equipment," and that Beloit had provided adequate warnings to Scott Paper regarding the risk incurred by Vines. Thus, the court held, Beloit had no liability for Vines's injury.
The law is clear that a summary judgment is proper and must be affirmed on appeal, if the evidence, viewed in a light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Lowe v. East End Memorial Hospital HealthCenters, 477 So.2d 339 (Ala. 1985). Once the party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Rule 56; Hanners v. Balfour Guthrie,Inc., 564 So.2d 412 (Ala. 1990). If the nonmovant fails to meet this burden, then a summary judgment must be entered in favor of the movant. Coggin v. Starke Bros. Realty Co., 391 So.2d 111
(Ala. 1980).
Vines was injured while working at "Paper Machine # 11" at Scott Paper when he became entangled in torn sheets of paper product that were spinning at a high rate of speed. Vines was using a compressed air hose to blow broken paper ("broke") into a disposal chute referred to as the "broke hole." As he was bending over to clean up some paper, a sheet of paper that was winding onto a reel broke. The paper entangled Vines around the head, arm, and body; he was lifted off the floor and then was thrown down, suffering injuries to his knee.
Vines contends that the component part of the machinery that caused his injury (the reel) was unreasonably dangerous or defective; specifically he contends: (1) Beloit failed to design and provide a barrier guard to keep Vines and other workers away from the device that caused the injury; (2) Beloit failed to design or provide safety belts or restraining devices for workers such as Vines; (3) Beloit failed to provide any warnings or provided inadequate warnings with the product; and (4) Beloit failed, after installation of the machine, to warn Vines of the dangers associated with it and/or failed to incorporate in the manuals or safety booklet adequate warnings for Vines's employer.
Paper Machine # 11 is an entire series of machines and pieces of equipment that, together, process pulp wood into paper. It is divided into several sections, including a wet end and a dry end. The machine produces several types of paper, such as paper towels, tissue, and other rolled paper products. Vines was injured at the dry end of the paper machine at the reel section. The reel, or reel drum, turns at a high rate of speed and feeds paper product onto a fiber core. The fiber core is held on a metal shaft called a core shaft. As the reel turns, it collects the paper product onto the fiber core. When the reel is full, it is released and the reel of paper product rolls down a set of horizontal rails and is moved to another location.
It is undisputed that Scott Paper is a sophisticated user of the equipment that was involved in Vines's accident. Scott Paper has 30 years of experience operating this type of paper machinery, and it has its own engineers specializing in the operation of paper machines. It is undisputed that safety is a priority with Scott Paper.
It is also undisputed that Paper Machine # 11 is not a "finished product" that Scott Paper obtained from a single vendor. Although Beloit designed most of the equipment in the area of Vines's accident, it is *Page 1005 
undisputed that the air hose system Vines was using to blow broke into the broke hole at the time of his accident was designed, manufactured, and sold by a second company. Moreover, the broke hole itself was designed and constructed by a third company.
There is also no dispute that Scott Paper retained significant control over the design of its plant and equipment and that it was knowledgeable about the hazards involved with the operation of its equipment. It maintained control over the procedures to be used by its employees while operating Paper Machine # 11. It is also undisputed that Scott Paper had a comprehensive safety program that combined the use of warning signs, color coded paint, guards, employee communication, and training. Scott Paper's manager of safety testified that he was satisfied that the company's program communicated to employees how they could enter in a safe manner the area where Vines's injury occurred. He stated that the use of guards, the use of warning signs, or the use of paint schemes was each only a part of an overall program designed to promote safety. It is undisputed that Scott Paper considered recommendations by Beloit and other vendors and that it was familiar with Beloit's publication concerning safety. It is also undisputed that this publication by Beloit recommended most, if not all, of the precautions Vines claims would have prevented his accident. Specifically, Beloit recommended (1) safety color coding — painting the entire area orange between the rails where Vines was standing when he was injured[1]; (2) written safety warnings
— warning that the equipment should not be operated until all personnel are accounted for and outside safety lines; and (3)warning signs — to be installed adjacent to the area where Vines was injured. However, Scott Paper relied on its own comprehensive safety program and did not adopt several of the recommendations made by Beloit.[2] Scott Paper, and not Beloit, retained control over the design of its plant and equipment, and Scott determined the procedure that its employees would use to perform the work Vines was involved in at the time of the accident.
This Court has previously addressed a similar fact situation in Purvis v. PPG Industries, Inc., 502 So.2d 714 (Ala. 1987).Purvis involved a claim by the employee of a dry cleaning company that she was injured by exposure to a dry cleaning solvent. She sued the manufacturer of that solvent, claiming that the manufacturer had had a duty to provide warnings directly to her regarding the risks associated with the solvent. We held that the manufacturer had provided adequate warning to a middleman better situated than the manufacturer to furnish those warnings to the plaintiff, and we stated:
 "[A] manufacturer . . . ought not be held liable where it has made reasonable efforts to convey warnings and/or product information that, due to circumstances beyond the manufacturer's control, were not passed on to or received by the ultimate user. Where the third party has an independent duty to warn the ultimate user, . . . the manufacturer is justified in relying upon the third party to perform its duty."
Purvis, supra, at 720.
The Eleventh Circuit Court of Appeals, applying Alabama law, has issued an opinion that we find persuasive in this case. InCook v. Branick Mfg., Inc., 736 F.2d 1442 (11th Cir. 1984), the court considered a manufacturer's duty under Alabama law to protect a purchaser's employees from potential hazards in its product. The product was machinery used in the process of recapping tires. The manufacturer had made the employer aware of the hazard that subsequently resulted in the plaintiff's injury. The manufacturer had recommended warnings and operating procedures to reduce the risk. However, the plaintiff's employer did not adopt these recommendations. The Eleventh Circuit affirmed a judgment based on a directed verdict in favor of the manufacturer. The court stated: *Page 1006 
 "[A]ny duty on the part of the [the manufacturer] to warn of the [dangerous working condition] would ordinarily be discharged when [the manufacturer] notified all supervisory personnel of the [injured worker]. They knew what employees of theirs had assumed such relationships to them that they would be put to work on this job. . . . To require the [manufacturer] to attempt to learn the identity of each and every employee [of the employer], who was and would be involved on this job, would not only be wholly unreasonable, but it would in all probability prove both futile and impossible. . . ."
Cook, at 1446, quoting Crawford Johnson Co. v. Duffner,279 Ala. 678, 189 So.2d 474, 477 (1966). See also Davis v. AvondaleIndustries, Inc., 975 F.2d 169 (5th Cir. 1992) (a manufacturer who sells an industrial product to a sophisticated purchaser has no duty to provide warnings to the employee of that purchaser where the purchaser has an obligation to inform its employees).
Beloit provided such warnings to Scott Paper that Scott Paper was aware of the risk associated with the equipment. Additionally, Beloit made a number of safety recommendations calculated to reduce or eliminate that risk. It is clear that Scott Paper retained control over its plant and equipment and that Beloit did not have the power to force Scott Paper to paint its floor orange, install warning signs in the mill, or adopt particular safety practices.
Based on these facts, the trial court correctly entered the summary judgment in favor of Beloit on the failure-to-warn claim.
Vines also claims that Beloit was guilty of negligently or wantonly designing a defective workplace product. Essentially, Vines argues that because Beloit was aware that workers were directed by Scott Paper to go between the rails while the reel was operating, Beloit should have offered to design or provide a guard directly in front of the reel, or a safety belt restraint device, or paint schemes. However, there is no evidence that the design alternatives proposed by Vines would reduce the risk to workers or would make the machine safer. Vines presented no evidence that the alternative design that he proposed would actually make the product safer, and he presented no evidence that the utility of the alternative design outweighed the utility of the manufacturer's design. Furthermore, it is undisputed that if Beloit's recommendations had been followed, Vines's accident could not have happened, because while the machine was operating he would not have been in the area where his accident occurred (between the rails).
We also find that the deposition testimony presented by Vines is properly before this Court. As the trial court noted, the depositions were available to it at the time oral argument was held on Beloit's motion for summary judgment.
The judgment of the trial court is affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and STEAGALL, JJ., concur.
[1] Orange is the basic color for designating hazardous points on machinery that might cause personal injury.
[2] As the trial court noted in its order, the fact that Scott Paper did not adopt all of the recommendations made by Beloit is not to say that its approach was ill advised or improper.