This case arises out of injuries suffered by Don Lawley and Derrick Bryant in the explosion of a plastic gas pipeline they were installing for their employer, Mobile Gas Company ("Mobile Gas"). Lawley and Bryant sued Chevron Chemical Company ("Chevron"), the manufacturer of the plastic pipe, alleging negligent failure to warn and alleging liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") for placing an unreasonably dangerous product on the market. The trial court granted Chevron's motion for summary judgment, noting that Chevron had warned Mobile Gas and that Mobile Gas had been aware of the risk involved in installing plastic pipe. The Court of Civil Appeals reversed, holding that whether Chevron had adequately warned Mobile Gas of the danger of fire caused by static electricity was a question for the jury.Lawley v. Chevron Chemical Co., 720 So.2d 918
(Ala.Civ.App. 1997). Because we conclude that Chevron did not have a duty to warn Lawley and Bryant or Mobile Gas of commonly known dangers, we reverse and render a judgment for Chevron.
 I. Facts and Procedural History
The evidence in this case is undisputed. Chevron sold plastic pipe to Mobile Gas to be used in a natural gas pipeline. The general danger that static electricity buildup can cause a fire and the specific danger of such a fire when wet rags are not used to ground the pipe during the purging process have been common knowledge in the gas pipeline industry for years. Nevertheless, Chevron provided Mobile Gas a bulletin that gave the following warning regarding the purging process:
 "Before You Start . . . spray plastic pipes with water and ground with wet cloth to remove static electricity prior to cutting or tapping a pressurized line."
Mobile Gas had prepared for its employees who worked on pipelines a manual that stated in pertinent part:
 "The following procedures shall be followed
when purging and repairing plastic mains. Particular attention to prevention of static electric discharge shall be practiced. . . . When plastic gas lines are broken *Page 924 
or being purged, static electric charges have been known to build up and, in some instances, cause a fire. . . . The best grounding device to date appears to be wet rags over the pipe and wet to the earth. . . ."
(Emphasis added.)
Mobile Gas assigned the job of installing the new plastic pipe to two of its employees, Lawley and Bryant. In Lawley and Bryant's truck there was a copy of the manual with the quoted warning and precautionary procedure. Nonetheless, on the day of the accident neither Lawley, who had installed plastic pipe 200 times before, nor Bryant, who had installed plastic pipe 50 times before, took the precaution of grounding the plastic pipe with wet rags. While Lawley and Bryant were installing the plastic pipe and purging it with air, static electricity built up and ignited natural gas fumes. The resulting explosion injured both men. The parties agree that use of the wet rags to ground the plastic pipe would have prevented the explosion.
Lawley and Bryant filed this action against Chevron, claiming: (1) that Chevron was liable under the principles established in § 388 of the Restatement (Second) of Torts (1965) for negligent failure to warn them of the danger of static electricity buildup; and (2) that Chevron was liable under those principles of § 402 A of the Restatement (Second) ofTorts embodied in the AEMLD, for placing an unreasonably dangerous product (the plastic pipe) on the market without a warning. Because of the industry-wide knowledge both of the danger of static electricity buildup and of the precaution of using wet rags to prevent such a buildup; because of Chevron's warning in its bulletin to Mobile Gas; and because of Mobile Gas's warning in the manual to Lawley and Bryant, the trial court entered a summary judgment for Chevron. The Court of Civil Appeals, however, reversed, holding that the adequacy of the warning presented a jury question that precluded summary judgment.
 II. Requirement to Warn
A summary judgment is appropriate in a case where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.;Vines v. Beloit Corp., 631 So.2d 1003, 1004 (Ala. 1994). We review motions for summary judgment in the light most favorable to the nonmovant, resolving all reasonable doubts in favor of the nonmovant. Id. To determine whether Chevron is entitled to a judgment as a matter of law, we must determine whether Chevron had a duty to warn Lawley and Bryant of the danger that caused the accident. See Rose v. Miller Co., 432 So.2d 1237, 1238 (Ala. 1983) (stating that the existence of a legal duty is a question of law for the court, not the jury, to decide).
 A. Negligent Failure to Warn
Lawley and Bryant argue first that Chevron negligently failed to warn them, the ultimate users, of the dangers involved in installing the plastic pipe. Lawley and Bryant acknowledge that Chevron gave Mobile Gas a bulletin that stated, "Before You Start . . . ground [pipe] with wet cloth to remove static electricity." Nevertheless, they argue that this warning to Mobile Gas was not adequate to notify them of the severity of the danger posed by static electricity. Chevron responds that it had no duty to warn Lawley and Bryant of a danger of which their employer, Mobile Gas, was already aware.
The duty to warn end users of the dangers of products arises, in a pure negligence context, from § 388, Restatement(Second) of Torts, as adopted by this Court. SeePurvis v. PPG Industries, Inc., 502 So.2d 714, 719
(Ala. 1987) (interpreting a negligent-failure-to-warn claim using § 388). Section 388 states:
 "§ 388. Chattel Known to be Dangerous for Intended Use
 "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in *Page 925 
the manner for which and by a person for whose use it is supplied, if the supplier
 "(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
 "(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 "(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."
(Emphasis added.)
We have held that the duty to warn contemplated by § 388(c) is triggered only when the supplier has "no reason to believe" that the user will realize the "dangerous condition" of the product referred to in § 388(b). See Gurley v. AmericanHonda Motor Co., 505 So.2d 358, 361 (Ala. 1987) (stating that "[t]here is no duty to warn of every potential danger or to explain the scientific rationale for each warning, but only a duty to warn of those dangers which the owner or user would not be aware of under the particular circumstances of his use of the product in question"); Ford Motor Co. v. Rodgers,337 So.2d 736, 739 (Ala. 1976) ("The objective of placing a duty to warn on the manufacturer or supplier is to inform a user of the danger [of] which he is not aware[;] therefore, there is no duty to warn when the danger is obvious."). Thus, the manufacturer is not required to provide a redundant warning, but only to provide a warning of those dangers that are not obvious to the user.
Lawley and Bryant cite Hicks v. Commercial Union InsuranceCo., 652 So.2d 211 (Ala. 1994), in support of their contention that Chevron had a duty to notify Mobile Gas notwithstanding the fact that Mobile Gas was aware of the danger posed by static electricity buildup and the fact that Mobile Gas had informed its employees of this danger. In Hicks,id. at 215, the manufacturer of a pipe stopper was sued after the pipe stopper dislodged during a hydrostatic pressure test and struck an employee.[1] The manufacturer had provided an instruction booklet with a warning that pipe stoppers are dangerous and that people should not stand in front of the pipe stopper during pressure testing. Id. at 217. The manufacturer presented evidence indicating that the danger of pipe stoppers coming loose was common knowledge among employees who used them. Id. This Court, however, focused on the lack of evidence of common knowledge that mismatching of the jaws of the pipe stopper would greatly increase the likelihood of an accident. Id. This Court held that the evidence indicating common knowledge of a general danger did not relieve the manufacturer of its duty to warn, and that there was a genuine issue of material fact as to the adequacy of the warning provided by the manufacturer. Id.
This case is unlike Hicks, however, because the undisputed evidence in this case establishes that among installers of plastic pipe it was common knowledge that the failure to properly ground the pipe during the purging process would greatly increase the danger that static electricity would build up and ignite natural gas and cause a fire. The warning printed in Mobile Gas's manual expressly stated:
 "Particular attention to prevention of static electric discharge shall be practiced. . . . When plastic gas lines are broken or being purged, static electric charges have been known to build up and, in some instances, cause a fire. . . . The best grounding device to date appears to be wet rags over the pipe and wet to the earth. . . ."
Thus, not only was the specific danger of failure to ground the plastic pipes with wet rags during the purging process known in *Page 926 
the industry and known to the employer, Mobile Gas, an experienced user, but it was published by Mobile Gas in a manual given to the very employees who were injured.[2] That manual, with the specific warning, was in the truck by the work site where the injury took place. It is undisputed that had Lawley and Bryant followed the safety procedure described in the manual provided to them, and used wet rags to ground the pipe during the purging process, they would not have been injured. Accordingly, Chevron did not have a duty to provide Mobile Gas or its employees with a warning of a danger of which they already were, or had reason to be, aware.[3] SeeGurley, 505 So.2d at 361; Entrekin v. AtlanticRichfield Co., 519 So.2d at 450 (Ala. 1987) (same);Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465,471 (11th Cir. 1993) (same).
 B. Requirement to Warn under the AEMLD
Lawley and Bryant also contend that even if their failure-to-warn claim does not prevail under general negligence principles, it should prevail under the AEMLD. Essentially, they argue that Chevron is strictly liable for its failure to warn, under the AEMLD, which embodies principles of § 402 A of theRestatement (Second) of Torts. Chevron responds that the substance of the affirmative defense of a warning under the AEMLD is not distinct from the duty to warn under § 388.[4] See Casrell v. Altec Indus., Inc.,335 So.2d 128, 130, 133 (Ala. *Page 927 
1976) (referring to Restatement (Second) of Torts
§ 402 A in establishing the AEMLD).
Section 402 A reads:
 "§ 402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer
 "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 "(a) the seller is engaged in the business of selling such a product, and
 "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 "(2) The rule stated in Subsection (1) applies although
 "(a) the seller has exercised all possible care in the preparation and sale of his product, and
 "(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
(Emphasis added.) Comment j to § 402 A states, in pertinent part:
 "Directions or warning. In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. . . .
 ". . . .
 "Where warning is given, the seller may reasonably assume that it will be read and heeded. . . ."
(Emphasis added.) Thus, it is clear that the drafters of theRestatement intended § 402 A's concept of an "unreasonably dangerous" product not to include a product the dangers of which the consumer could be expected to be aware of, an awareness that may be enlightened by a warning.
Nonetheless, we recognize that some courts in other jurisdictions have held that the strict liability nature of § 402 A precludes any negligence-type analysis of the user's awareness of the product's danger. See generally, e.g.,Alexander v. Morning Pride Mfg., Inc.,913 F.Supp. 362, 371 (E.D.Pa. 1995) (refusing to incorporate negligence concepts into strict liability cases because "[t]he deterrent effect of imposing strict product liability standards would be weakened") (quoting Kimco Dev. Corp. v. Michael D's CarpetOutlets, 536 Pa. 1, 9, 637 A.2d 603, 606-07 (1993));Beshada v. Johns-Manville Products Corp., 90 N.J. 191,204, 447 A.2d 539, 546 (1982) (refusing to incorporate negligence principles in a strict liability action because "[s]trict liability focuses on the product, not the fault of the manufacturer").[5]
Section 402 A and the AEMLD, however, are "strict" liability provisions only in the sense that the manufacturer's reasonable care in preparing the product and the user's privity with the manufacturer are not relevant. See Casrell,335 So.2d at 133-34; Restatement (Second) of Torts
§ 402 A(2)(a) and (b). The drafters of the Restatement made it clear that the concept of an "unreasonably dangerous" product takes into account the user's awareness of the danger and *Page 928 
that awareness may be enlightened by a warning.
The majority of courts that have interpreted § 402 A have stated that § 402 A requires consideration of the user's awareness of a danger, which may be enlightened by a warning, under the principles of § 388. See Anguiano v. E.I.DuPont De Nemours Co., 44 F.3d 806, 811-12 (9th Cir. 1995) (stating that "the question whether a manufacturer has a duty to warn under strict liability depends on the standards for determining a duty to warn under a negligence action pursuant to [Restatement (Second)] section 388");Klem v. E.I. DuPont De Nemours Co., 19 F.3d 997,1001-03 (5th Cir. 1994) (holding that failure-to-warn claims in strict liability and in negligence duplicate one another);Werner v. Upjohn Co., 628 F.2d 848, 858 (4th Cir. 1980) (stating that although the negligence and strict liability theories may be phrased differently the issue is generally the same: "was the warning adequate?"), cert. denied, 449 U.S. 1080,101 S.Ct. 862, 66 L.Ed.2d 804 (1981); Sterling Drug, Inc. v.Yarrow, 408 F.2d 978, 992-93 (8th Cir. 1969) (holding that the duties imposed by §§ 388 and 402 A of theRestatement are the same regardless of characterization, because the manufacturer must give a warning that is reasonable under the circumstances); Sell v. Bertsch Co., 577 F.Supp. 1393, 1397 (D.Kan. 1984) (stating "A failure to warn may be negligence under Restatement
§ 388 or may make the product `defective' underRestatement § 402 A. . . . Under either theory, the duty to warn is one of ordinary care."); Leesley v.West, 165 Ill.App.3d 135, 139, 518 N.E.2d 758, 761,116 Ill.Dec. 136, 139 (holding that where the issue regards a manufacturer's failure to warn, "the manufacturer's duty is essentially the same under either a negligence or [a] strict liability theory"), app. denied, 119 Ill.2d 558,119 Ill.Dec. 387, 522 N.E.2d 1246 (1988); Owens-Illinois, Inc. v.Zenobia, 325 Md. 420, 435, 601 A.2d 633, 640 (1992) (embracing negligence principles in strict liability causes of action for failure to warn); Hahn v. Richter,543 Pa. 558, 673 A.2d 888 (1996) (stating that § 388's reasonable care standard was applicable to a cause of action alleging strict liability failure to warn).[6] The Supreme Court of California explained its rejection of the exclusion of warning concepts from § 402 A in these terms:
 "[T]he strict liability doctrine has incorporated some well-settled rules from the law of negligence and has survived judicial challenges asserting that such incorporation violates the fundamental principles of the doctrine. It may also be true that the `warning defect' theory is `rooted in negligence' to a greater extent. . . . The `warning defect' relates to a failure extraneous to the product itself. Thus, while a manufacturing or design defect can be evaluated without reference to the conduct of the manufacturer, . . . the giving of a warning cannot."
Anderson v. Owens-Corning Fiberglas Corp.,53 Cal.3d 987, 1002, 810 P.2d 549, 558, 281 Cal.Rptr. 528, 537 (1991).
The user's awareness of a danger is implicated by both the "reasonable belief" component of § 388(b) and the "unreasonably dangerous" component of § 402 A. This Court, *Page 929 
therefore, has followed the majority rule in reading § 402 A's "unreasonably dangerous" component to include the concept of the plaintiffs awareness of the danger of a product. For example, in Hicks, 652 So.2d at 215-17, the case cited by Lawley and Bryant in support of their negligent-failure-to-warn argument, this Court held that on an AEMLD claim a question of the adequacy of a warning created a jury issue. The standards for warnings developed under § 388 are properly applied to claims framed under both § 402 A and the AEMLD. Given the wealth of authority and the cogent rationale for interpreting § 402 A as the drafters of theRestatement wrote it, we are not disposed to adopt a more restrictive definition of the AEMLD.
Accordingly, for the same reasons that Chevron has no legal duty to warn Lawley and Bryant under pure negligence principles, it has a complete affirmative defense under the AEMLD. We reverse the judgment of the Court of Civil Appeals and render a judgment for Chevron.
REVERSED AND JUDGMENT RENDERED.
HOOPER, C.J., and MADDOX, SHORES, HOUSTON, COOK, and LYONS, JJ., concur.
ALMON, J., concurs in the result.
KENNEDY, J., dissents.
[1] This Court described a "pipe stopper" as follows:
 "Pipe stoppers cover the opening of pipes extending from vessels for the purpose of pressurizing vessels for testing. A pipe stopper contains four `jaws,' which secure the pipe stopper to the pipe extending from the vessel by expanding with increased pressure. As the pressure increases, the jaws expand and grip the inside of the pipe. The jaws are manufactured in sets. Although the jaws within a set are apparently uniform in size, the size of the jaws of different sets varies slightly. . . . The jaws easily detach from the pipe stopper itself. . . ."
Hicks, 652 So.2d at 215.
[2] In addition, we note that the warning in the bulletin that Chevron gave to Mobile Gas was adequate to relieve Chevron of liability because Mobile Gas had the duty to warn its employees of known workplace dangers. See Ala. Code 1975, § 25-5-1 (requiring employers to provide employees with a safe place to work); 49 C.F.R. § 192.751 (requiring employers to "take steps to minimize the danger of accidental ignition of gas in any structure or area when the presence of gas constitutes a hazard of fire or explosion"); Hill v. Metal Reclamation,Inc., 348 So.2d 493, 494 (Ala. 1977) (stating that "it is the duty of the employer to exercise reasonable care to warn the employee of any risk of harm and to acquaint him with any dangerous features of the equipment, premises, or procedures with which he works").
[3] We note that Lawley indicated that he had failed to read the manual provided by Mobile Gas, even though he had once been reprimanded for failing to follow safety procedures. Lawley's choice not to read the warning in the manual does not impose a legal duty on Chevron to place a warning on the pipe itself. See E.R. Squibb Sons, Inc. v. Cox, 477 So.2d 963,971 (Ala. 1985) (stating that a plaintiff cannot maintain a failure-to-warn action where he simply chooses not to read a legible warning); Gurley v. American Honda Motor Co.,505 So.2d 358, 361 (Ala. 1987) (same); see also Vines v.Beloit Corp., 631 So.2d 1003, 1006 (Ala. 1994) ("a manufacturer who sells an industrial product to a sophisticated purchaser has no duty to provide warnings to the employee of that purchaser where the purchaser has an obligation to inform its employees"); McGhee v. Oryx Energy Co.,657 So.2d 853, 855 (Ala. 1995) (stating that "where a third party has an independent duty to warn the ultimate user of the dangers associated with the use of a product, the manufacturer is justified in relying upon that third party to perform its duty"); Restatement (Second) of Torts § 388 cmt. n (stating that the manufacturer is not required to inform the ultimate users of dangers when a third party has that duty).
[4] This Court has previously stated that the user's awareness of a product's danger is an "affirmative defense" under the AEMLD and under § 402 A of the Restatement(Second) of Torts. Atkins v. American Motors Corp.,335 So.2d 134, 143 (Ala. 1976); Entrekin v. Atlantic RichfieldCo., 519 So.2d 447, 450 n. 5 (Ala. 1987). Because a trial court may consider affirmative defenses in ruling on a summary judgment motion, Bechtel v. Crown Cent. PetroleumCorp., 495 So.2d 1052, 1053 (Ala. 1986), this Court has also considered the user's knowledge of a dangerous condition in AEMLD cases under the label of the manufacturer's "duty" to warn, Hicks v. Commercial Union Insurance Co.,652 So.2d 211 (Ala. 1994). As Prosser and Keeton explain:
 "[Primary assumption of risk occurs] where the plaintiff voluntarily enters into some relation with the defendant, with knowledge that the defendant will not protect him against one or more future risks that may arise from the relation. He may then be regarded as tacitly or impliedly consenting to the negligence, and agreeing to take his own chances. Thus, he may accept employment, knowing that he is expected to work with a dangerous horse; or ride in a car with knowledge that the brakes are defective, or the driver incompetent. . . . [T]he legal result is that the defendant is simply relieved of the duty which would otherwise exist."
Prosser Keeton, The Law of Torts 481 (5th ed. 1984) (second emphasis added) (footnotes omitted). The fine distinction between an affirmative defense and the lack of a duty to warn generally makes little, if any, difference in the assessment of the merits of a products liability action.
[5] In Beshada, 90 N.J. at 204-05,447 A.2d at 546-47, the Supreme Court of New Jersey cited a law review article by Professor Keeton for the proposition that § 402 A is a strict liability provision that is unaffected by the reasonableness of a warning. Page Keeton, Product Liability— Inadequacy of Information, 48 Tex. L. Rev. 398, 404 (1970). We note that the fifth edition of Prosser Keeton,The Law of Torts 697-98 n. 21 (1984), states that Professor Keeton has changed his position. See Page Keeton,The Meaning of Defect in Products Liability Law — AReview of Basic Principles, 45 Mo. L. Rev. 579, 586-87 (1980).
[6] We note that the Restatement (Third) of Torts, comment n (1997), provides in pertinent part:
 "A separate and more difficult question arises as to whether a case should be submitted to a jury on multiple theories of recovery. Design and failure-to-warn claims may be combined in the same case because they rest on different factual allegations and distinct legal concepts. However, two or more factually identical . . . failure-to-warn claims . . . should not be submitted to the trier of fact in the same case under different doctrinal labels. Regardless of the doctrinal label attached to a particular claim, . . . [failure-to-warn] claims rest on a risk-utility assessment. To allow two or more factually identical . . . claims to be brought under different doctrinal labels would generate confusion and may well result in inconsistent verdicts."
(Emphasis added.) See generally, e.g., Richard L. Cupp, Jr.,The "Uncomplicated" Law of Products Liability: Reflectionsof a Professor Turned Juror, 91 Nw. U. L. Rev. 1082, 1090 (1997) (stating that the difference between negligence and strict liability failure to warn cases has been reduced to mere "rhetorical preference"); James A. Henderson, Jr., and Aaron D. Twerski, Doctrinal Collapse in Products Liability: The EmptyShell of Failure to Warn, 65 N.Y.U. L. Rev. 265, 272 (1990) (stating that "after years of frustration, many courts have finally abandoned the search and declared that, for all intents and purposes, strict liability, as applied to generically dangerous product cases, was simply negligence by another name").