871 So.2d 28 (2003)
Brenda D. TILLMAN, as executrix under the will of Kalen Oliver Tillman, deceased
v.
R.J. REYNOLDS TOBACCO CO. et al.
1001644.
Supreme Court of Alabama.
June 30, 2003.
*29 Ross Diamond III of Diamond, Hasser & Frost, Mobile; and Jere L. Beasley and R. Graham Esdale, Jr., of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for plaintiff.
Samuel H. Franklin, William H. Brooks, and Stephen J. Rowe of Lightfoot, Franklin & White, L.L.C., Birmingham; Joseph P.H. Babington and John T. Dukes of Helmsing, Leach, Herlong, Newman & *30 Rouse, P.C., Mobile; and Thomas D. Schroeder of Womble, Carlyle, Sandridge & Rice, P.L.L.C., Winston-Salem, North Carolina, for defendants.
PER CURIAM.
The United States Court of Appeals for the Eleventh Circuit has certified the following question to this Court pursuant to Rule 18, Ala. R.App. P.:
"Whether there is any potential cause of action under any theory against any retail defendants including those that employ pharmacists who sell cigarettes for claims brought under the Alabama Extended Manufacturer's Liability Doctrine, or premised on negligence, wantonness, or civil conspiracy under Alabama law."[1]
Tillman v. R.J. Reynolds Tobacco Co., 253 F.3d 1302, 1307-08 (11th Cir.2001). This Court heard oral argument in this case on May 15, 2002.[2] We answer the certified question in the affirmative as to claims premised on negligence and wantonness and as to claims premised on an alleged civil conspiracy; as to all other claims, including those premised on the Alabama Extended Manufacturer's Liability Doctrine ("the AEMLD"), we answer the question in the negative.

I. Facts and Procedural History
Kalen Tillman originally sued the defendants[3] in the Mobile Circuit Court, alleging that he had smoked Winston brand cigarettes since 1968, and that as a result he developed lung cancer.[4] He asserted products-liability claims under the AEMLD, as well as negligence, wantonness, and civil-conspiracy claims. Kalen died in April 1999, and Brenda Tillman, his wife and the executor of his estate, was substituted as the plaintiff in this action.
The defendants removed the case to the United States District Court for the Southern District of Alabama on the basis of diversity jurisdiction. Tillman filed a motion to remand the case to the Mobile Circuit Court, which the district court denied. In October 1998, the district court *31 dismissed the retailers and the individual defendants as having been fraudulently joined. Tillman then voluntarily dismissed RJR Nabisco, Inc., leaving R.J. Reynolds Tobacco Co. ("Reynolds") as the sole defendant. In January 2000, the district court granted Reynolds's motion to dismiss for failure to state a claim and entered a judgment in favor of Reynolds. Tillman v. Reynolds Tobacco Co., 89 F.Supp.2d 1297 (S.D.Ala.2000).
On appeal, the United States Court of Appeals for the Eleventh Circuit affirmed the district court's dismissal of the claims as against the five individual defendants. Tillman's claims against the retailers alleged a violation of the AEMLD in the marketing and sales of cigarettes, as well as negligence, wantonness, and civil-conspiracy claims. As to those defendants, the Eleventh Circuit Court of Appeals certified the present question and provided the following analysis of the relevant Alabama law:
"To recover under the AEMLD, plaintiff must show, among other things, that `an injury was caused by one who sold a product in a defective condition that made the product unreasonably dangerous to the ultimate user or consumer....' Bell v. T.R. Miller Mill Co., 768 So.2d 953, 957 (Ala.2000); see also Allen v. Delchamps, Inc., 624 So.2d 1065, 1068 (Ala.1993). A product is not unreasonably dangerous unless it fails to `meet the reasonable safety expectations of an "ordinary consumer," that is, an objective "ordinary consumer," possessed of the ordinary knowledge common to the community.' Deere & Co. v. Grose, 586 So.2d 196, 198 (Ala.1991) (citations omitted); see also Casrell v. Altec Indus., Inc., 335 So.2d 128, 133 (Ala.1976) (establishing `reasonable expectations' test and adopting comment i to § 402A of the Restatement (Second) of Torts ); Ex parte Chevron Chem. Co., 720 So.2d 922, 927 (Ala.1998) (`it is clear drafters of Restatement intended § 402A's concept of an "unreasonably dangerous" product does not include "a product the dangers of which the consumer could be expected to be aware of, an awareness that may be enlightened by a warning."`). `Although, under Alabama law, a jury ordinarily evaluates a plaintiff's claims that a product is defective, our review of the pertinent case law convinces us that certain products whose inherent danger is patent and obvious, do not, as a matter of law, involve defects of a sort that a jury should resolve.' Elliott v. Brunswick Corp., 903 F.2d 1505, 1507 (11th Cir.1990)."
253 F.3d at 1306. The Eleventh Circuit Court of Appeals noted that it had "found no Alabama case, nor [had] the parties referred [it] to any decided under the AEMLD involving cigarettes. The Alabama cases cited by the parties involve different products." 253 F.3d at 1307.

II. Analysis

A. AEMLD
The first part of the certified question is whether there is a cause of action against tobacco retailers under the AEMLD. To establish liability under the AEMLD, a plaintiff must show
"[1] that an injury was caused by one who sold a product in a defective condition that made the product unreasonably dangerous to the ultimate user or consumer; [2] that the seller was engaged in the business of selling such a product; and [3] that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold."
Bell v. T.R. Miller Mill Co., 768 So.2d 953, 957 (Ala.2000) (emphasis added). See also Grimes v. General Motors Corp., 205 *32 F.Supp.2d 1292, 1294 (M.D.Ala.2002); Hicks v. Commercial Union Ins. Co., 652 So.2d 211, 215 (Ala.1994).
In this case, the parties do not dispute the second and third parts of the three-part test. The retailer defendants do not dispute that they are "engaged in the business of selling" cigarettes, Bell, 768 So.2d at 957, or that the cigarettes "reach[ed] the user without substantial change in the condition in which [they were] sold." 768 So.2d at 957. The only question that must be answered in this case to determine whether a cause of action exists under the AEMLD is related to the nature of the product itself: Are cigarettes an unreasonably dangerous product?
"`Liability under the AEMLD turns upon whether a product is unreasonably dangerous when put to its intended use.'" Hicks, 652 So.2d at 216 (quoting Koehring Cranes & Excavators, Inc. v. Livingston, 597 So.2d 1354, 1355 (Ala. 1992)). In Casrell v. Altec Industries, Inc., 335 So.2d 128 (Ala.1976), the case that, together with Atkins v. American Motors Corp., 335 So.2d 134 (Ala.1976), established the AEMLD, this Court explained:
"The product either is or is not `unreasonably dangerous' to a person who should be expected to use or to be exposed to it. The important factor is whether it is safe or dangerous when the product is used as it was intended to be used. Cf. 62 Ky. L.J. 866. However, danger may be obviated by an adequate warning. Comment i. of § 402 A, Restatement of Torts 2d, states:
"`The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'"
335 So.2d at 133 (footnote omitted). More recently, this Court held that to show that a product is in a "defective condition unreasonably dangerous to the plaintiff" the plaintiff must demonstrate that "the product fails to meet the reasonable safety expectations of an `ordinary consumer,' that is, an objective `ordinary consumer,' possessed of the ordinary knowledge common to the community." Deere & Co. v. Grose, 586 So.2d 196, 198 (Ala.1991), citing Casrell, 335 So.2d at 133.
In determining whether a product is unreasonably dangerous, this Court and the Court of Appeals for the Eleventh Circuit have explained that there are some products the use of which are "so firmly grounded in common sense as to require no specific instructions or warnings." Entrekin v. Atlantic Richfield Co., 519 So.2d 447, 450 (Ala.1988), quoted in Elliott v. Brunswick Corp., 903 F.2d 1505, 1507 (11th Cir.1990). Although a jury will normally determine the dangerousness of a product, "certain products whose inherent danger is patent and obvious, do not, as a matter of law, involve defects of a sort that a jury should resolve." Elliott, 903 F.2d at 1507 (emphasis added).
"Some products, by their nature, (or, in modern parlance, by their conscious design), place both users and bystanders in some measure of danger. A knife or axe may cut persons, as well as their intended targets. Fish hooks can wound; saws can maim, and revolving propellers can cause fearful damage. Yet ... we do not hold manufacturers liable simply because the use of their products involves some risk."
903 F.2d at 1507 (emphasis added).
As noted above, this Court in Casrell quoted with approval Comment i. to § 402A, Restatement (Second) of Torts. See 335 So.2d at 133; Elliott, 903 F.2d at *33 1507 (recognizing the adoption of Comment i. by this Court). Comment i. includes tobacco in its list of examples of products that are not unreasonably dangerous, notwithstanding their potential for harm to the user or consumer: "Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous."[5]
Moreover, there is a "wealth of judicial precedence" recognizing that the dangers of cigarette smoking are well-known.[6] See Tillman, 89 F.Supp.2d at 1301-02 (citation to numerous cases recognizing the commonly known dangers of cigarette smoking). "The dangers of cigarette smoking have been a matter of public knowledge since at the latest January 1, 1966, when the first government-mandated warning labels appeared on cigarette packages." Wakeland v. Brown & Williamson Tobacco Corp., 996 F.Supp. 1213, 1219 (S.D.Ala. 1998). Less than three years ago, the United States Supreme Court stated that, when Congress enacted various tobacco-related legislation beginning in 1965, "the adverse health consequences of tobacco use were well known, as were nicotine's pharmacological effects." Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 138, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (emphasis added). Indeed, the Supreme Court acknowledged that in that case the Food and Drug Administration had "amply demonstrated that tobacco use, particularly among children and adolescents, poses perhaps the single most significant threat to public health in the United States." 529 U.S. at 161, 120 S.Ct. 1291 (emphasis added).
We conclude that any danger to be found in cigarettes is not "`beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.'"[7]Casrell, *34 335 So.2d at 133 (quoting Comment i.). This Court has adopted Comment i. of § 402A of the Restatement (Second) of Torts, which expressly includes tobacco as an example of a product that is not "unreasonably dangerous." See Casrell, 335 So.2d at 133. When "put to its intended use," Hicks, 652 So.2d at 216that is, when the cigarette is ignited and the consequential fumes and smoke are deliberately inhaleda cigarette, like a saw, a fish hook, or butter, is not an "unreasonably dangerous product" under the AEMLD.
Moreover, even if this Court were to conclude that cigarettes are an unreasonably dangerous product, liability under the AEMLD is "obviated by an adequate warning," i.e., the federally mandated surgeon general's warning prominently displayed on every cigarette package since before Kalen Tillman began smoking cigarettes.[8]Casrell, 335 So.2d at 133; Tillman, 89 F.Supp.2d at 1302.
Therefore, we conclude that an AEMLD claim against retailers of cigarettes fails because (1) cigarettes are not an unreasonably dangerous product under the AEMLD; and (2) even if they were, the current warnings on cigarette packages regarding cigarette smoking obviate any unreasonable danger posed by the cigarettes.

B. Negligence and Wantonness
The Court of Appeals for the Eleventh Circuit also asked whether retailers of cigarettes could be subject to negligence and wantonness claims. The retailer defendants argue that Tillman's negligence and wantonness claims merge with her AEMLD claim. Indeed, some federal district courts in Alabama have expressly held as much. See, e.g., Grimes v. General Motors Corp., 205 F.Supp.2d 1292, 1295 (M.D.Ala.2002); Wakeland v. Brown & Williamson Tobacco Corp., 996 F.Supp. 1213, 1217 (S.D.Ala.1998).
It must be remembered, however, that the AEMLD, as established in Casrell and Atkins, supra, is "an example of judicial legislation," not of legislative enactment. Keck v. Dryvit Sys., Inc., 830 So.2d 1, 8 (Ala.2002). This Court warned last year in Keck that "[j]udicial decision-making should not be seen as the opportunity to legislate." 830 So.2d at 8. Alabama remains a common-law state, and therefore common-law tort actions "so far as [they are] not inconsistent with the Constitution, laws and institutions of this state ... shall continue in force, except as from time to time ... may be altered or repealed by the *35 Legislature." § 1-3-1, Ala.Code 1975. We will not presume to so define the boundaries of the judicially created AEMLD so that it subsumes the common-law tort actions of negligence and wantonness against the retailer defendants.

C. Civil Conspiracy
Although there remains a "potential cause of action" for negligence and/or wantonness as alleged in Tillman's complaint, there is no such potential cause of action for civil conspiracy in this case for the simple reason that Tillman's complaint did not assert a civil-conspiracy claim against the retailer defendants. Tillman concedes as much in her brief before this Court.
Even if a civil-conspiracy claim was before this Court (or before the United States Court of Appeals for the Eleventh Circuit), "[c]onspiracy itself furnishes no civil cause of action." Triple J Cattle, Inc. v. Chambers, 621 So.2d 1221, 1225 (Ala. 1993). There must be an underlying wrong to support the conspiracy claim. Ex parte Alabama Dep't of Transp., 764 So.2d 1263, 1271 (Ala.2000). Thus, there may exist a potential claim for conspiracy only to the extent that there exist (or preexist) independent claims against the retailers of cigarettes.

III. Conclusion
Therefore, we answer the question certified by the United States Court of Appeals for the Eleventh Circuit in the affirmative as to the potential cause of action premised on negligence and wantonness and any attendant cause of action for civil conspiracy; in all other respects we answer it in the negative.
QUESTION ANSWERED.
HOUSTON and HARWOOD, JJ., concur.
MOORE, C.J., and SEE, LYONS, BROWN, WOODALL, and STUART, JJ., concur in part and dissent in part.
JOHNSTONE, J., concurs specially in part and dissents in part.
MOORE, Chief Justice (concurring in part and dissenting in part).
I concur with the following conclusions in the per curiam opinion: (1) that there exists no viable claim against tobacco retailers premised on the Alabama Extended Manufacturer's Liability Doctrine ("the AEMLD"); (2) that the judicially created AEMLD does not subsume common-law tort claims of negligence and wantonness; and (3) that no civil-conspiracy claim, which would require an underlying claim, is before us. However, I dissent from the conclusion in the per curiam opinion that Brenda Tillman may proceed with the claims against the tobacco retailers premised on negligence and wantonness.
To prove a prima facie claim of negligence in Alabama, "`a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage to the plaintiff.'" Kmart Corp. v. Bassett, 769 So.2d 282, 284 (Ala.2000)(quoting Lowe's Home Ctrs., Inc. v. Laxson, 655 So.2d 943, 945-46 (Ala.1994)(emphasis added)). Similarly, "`[t]o establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains.'" Brushwitz v. Ezell, 757 So.2d 423, 432-33 (Ala.2000)(quoting Martin v. Arnold, 643 So.2d 564, 567 (Ala. 1994) (emphasis added)).
In Alabama, a prima facie claim of negligence or wantonness against tobacco *36 retailers for the sale of prepackaged cigarettes fails forat leastlack of proximate causation. The complaint in this case does not allege that the defendant retailers opened, altered, or inspected the double-sealed cigarette packages purchased by Kalen. Therefore, any defect in the product as manufactured cannot be imputed to the retailers, who were operating as mere conduits of the product. Thus, lacking the requisite element of causation, Tillman has no cause of action against the retailer defendants premised upon negligence or wantonness.
Accordingly, I dissent from the per curiam opinion insofar as it answers affirmatively the viability of the negligence and wantonness claims under Alabama law.
BROWN and STUART, JJ., concur.
SEE, Justice (concurring in part and dissenting in part).
As to Parts II.A. and II.C. of the per curiam opinion, I concur; however, as to Part II.B. of the per curiam opinion, I concur in part and dissent in part.
A majority of this Court, in Part II.B. of the per curiam opinion, concludes that Tillman's common-law negligence and wantonness claims are not subsumed under the judicially created AEMLD. I agree that the AEMLD does not subsume all of the negligence and wantonness claims Tillman asserts in her complaint. However, to the extent that Tillman's negligence and wantonness claims allege that the retailer defendants negligently marketed and sold an unreasonably dangerous product, I believe that our discussion of the viability of the AEMLD claim in Part II.A. of the per curiam opinion is dispositive of any allegation that cigarettes are an unreasonably dangerous product. See Veal v. Teleflex, Inc., 586 So.2d 188, 191 (Ala.1991)("The substance of the complaint against Teleflex was that it placed into the stream of commerce a product that was unreasonably dangerous for its intended use. This is a claim under the AEMLD, and the trial court did not err in refusing to charge the jury with regard to negligence and wantonness.").
The per curiam opinion concludes that Tillman's claim against the retailer defendants fails because cigarettes are not a "product unreasonably dangerous to the ultimate user or consumer." 871 So.2d at 31. See also Bell v. T.R. Miller Mill Co., 768 So.2d 953, 957 (Ala.2000). In reaching this conclusion, the per curiam opinion notes that Comment i of § 402A of the Restatement (Second) of Torts "expressly lists tobacco as an example of a product that is not unreasonably dangerous." Therefore, because a majority of this Court determines that cigarettes are not an unreasonably dangerous product, any claims that the retailer defendants negligently and wantonly marketed and sold such a product appear to be pretermitted by this discussion.
Nevertheless, I agree that any remaining common-law claims that are not premised on a determination that cigarettes are an unreasonably dangerous product are not subsumed by the AEMLD. Nonetheless, as Justice Lyons points out in his special writing, "incredibly difficult problems of proof await Tillman" if she is to overcome the statute-of-limitations defense and the defenses relating to causation. 871 So.2d at 37 (Lyons, J., concurring in part and dissenting in part).
LYONS, Justice (concurring in part and dissenting in part).
I concur with the conclusion expressed in Part II.A. of the per curiam opinion only to the extent it precludes liability, as a matter of law, against any retail defendant who sells cigarettes in a sealed package *37 and who 1) does not employ personnel who have superior knowledge about the contents of the package or 2) employs personnel who have superior knowledge about the contents of the package who are under no duty to convey that knowledge to the employer. I would recognize at least a theoretical basis for a claim against retailers employing pharmacists who have superior knowledge about the contents of a package of cigarettes who had a duty to convey that knowledge to the employer.
However, incredibly difficult problems of proof await Tillman in several areas. She must prove which of those retailers from which the decedent purchased cigarettes over the course of many years had pharmacists who, at the time of the purchases, had the aforementioned superior knowledge and job responsibilities that generated a duty to pass on their information to the employer. She must overcome the defense of the statute of limitations that begins with the onset of the addiction as discussed in the per curiam opinion in Spain v. Brown & Williamson Tobacco Corp., 872 So.2d 101 (Ala.2003). Finally, she must also overcome extremely formidable defenses relating to causation presented by reason of the warnings appearing in various formulations over the years on every package of cigarettes sold in this country. Nevertheless, I cannot say, based on the materials before us, that there is no "potential cause of action" against a retailer of tobacco products that employs or employed a pharmacist. Whether those claims will ever reach a jury is a matter we should not foreclose as a matter of law, at this stage of the proceeding. In all other respects, I respectfully dissent as to Part II.A.
I concur in Parts II.B. and II.C.
WOODALL, Justice (concurring in part and dissenting in part).
I respectfully dissent from the per curiam opinion's holdings regarding the claims asserted by Tillman under the Alabama Extended Manufacturer's Liability Doctrine. Otherwise, I concur.
JOHNSTONE, Justice (concurring specially in part and dissenting in part).
I concur in the holdings of the main opinion on the plaintiff's theories of negligence, wantonness, and conspiracy. I respectfully dissent from the rationale and holdings of the main opinion on the plaintiff's Alabama-Extended-Manufacturer's-Liability-Doctrine (AEMLD) theory. The plaintiff's best claim is viable under all three theories of AEMLD, negligence, and wantonness, severally.
The plaintiff's best claim now before us is that the tobacco-retailer defendants began selling cigarettes to Kalen Tillman when he was 12 years old in violation of a criminal statute intended to protect him from the defendants' conduct; that the cigarettes the defendants continually sold him in violation of that criminal statute addicted him to continued cigarette smoking; that the addiction prevented Kalen from stopping smoking; that the smoking caused Kalen's cancer; and that the cancer killed him. The trial court granted the tobacco retailers' Rule 12(b)(6), Fed.R.Civ. P., motions to dismiss for failure "to state a claim upon which relief can be granted." The issue before us is whether any of the plaintiff's theoriesAEMLD, negligence, or wantonnessrecognizes or accommodates this claim. The issue is not whether these defendants could plead or prove affirmative defenses, for the potential availability of affirmative defenses does not detract from the content of the plaintiff's complaint and therefore does not detract from the sufficiency of the complaint to *38 state a claim that should withstand these defendants' Rule 12(b)(6) motions.
Alabama outlawed selling cigarettes to minors 107 years ago. That law is now embodied in § 13A-12-3, Ala.Code 1975. The violation of this statute may constitute negligence. Fox v. Bartholf, 374 So.2d 294 (Ala.1979); Consolidated Freight-ways, Inc. v. Pacheco-Rivera, 524 So.2d 346 (Ala. 1988); and Sparks v. Alabama Power Co., 679 So.2d 678 (Ala.1996). See also Murray v. Alabama Power Co., 413 So.2d 1109 (Ala.1982), and Allen v. Delchamps, Inc., 624 So.2d 1065 (Ala.1993) (each of these two cited cases addresses a violation of a regulation rather than a statute). Similarly, a conscious violation of this statute with knowledge that injury would probably result could constitute wantonness. Hamme v. CSX Transp., Inc., 621 So.2d 281 (Ala. 1993); Senn v. Alabama Gas Corp., 619 So.2d 1320 (Ala.1993); Alabama Pattern Jury Instructions: Civil 29.00 (2d ed.1993).
The analysis of "good" tobacco in the main opinion, in its discussion of the AEMLD claim, may well explain why tobacco not contaminated with dangerous additives is not "unreasonably dangerous" to a normal adult. This analysis, however, depends on the "ordinary-consumer" standard"the reasonable safety expectations of an `ordinary consumer.'" Deere & Co. v. Grose, 586 So.2d 196, 198 (Ala.1991), as quoted in the main opinion. By law, a teenager is not and has not been an "ordinary consumer" of cigarettes. § 13A-12-3 and its predecessors. The "reasonable safety expectations" of Kalen Tillman when he was between 12 and 20 years of age, is a jury question. Likewise, after Kalen was addicted to cigarettes, he was no longer an "ordinary consumer" as a matter of law. The standard of "the reasonable safety expectations of the `ordinary consumer,'" Deere, supra, contemplates a consumer who is physically and mentally capable of responding to a danger he or she perceives. Whether Kalen, as an addicted adult, was an "ordinary consumer" subject to the "reasonable safety expectations" standard is a jury question.
The plaintiff's theories of negligence and wantonness are not merged with or subsumed under the AEMLD claim, as the tobacco-retailer defendants argue they are. Each theory is composed of its own essential elements, some distinct from the essential elements of the others. The negligence and wantonness theories are important in that they will accommodate an emphasis on each retailer's opportunity to know Kalen's minority status at the time of each of his purchases of cigarettes during his teenage years and an emphasis on each retailer's individualized knowledge (through the knowledge of its pharmacist, if any) of the dangers of cigarettes to all smokers and especially to minor smokers at the time of each sale. This Court has allowed plaintiffs to proceed on theories of negligence and wantonness together with the theory of AEMLD in these cases: Hobart Corp. v. Scoggins, 776 So.2d 56 (Ala. 2000); Ex parte Chevron Chem. Co., 720 So.2d 922 (Ala.1998); Flagstar Enters., Inc. v. Davis, 709 So.2d 1132 (Ala.1997); Halsey v. A.B. Chance Co., 695 So.2d 607 (Ala.1997); Ford Motor Co. v. Burdeshaw, 661 So.2d 236 (Ala.1995); Mobile Infirmary v. Delchamps, 642 So.2d 954 (Ala.1994); Vines v. Beloit Corp., 631 So.2d 1003 (Ala. 1994); Yarbrough v. Sears, Roebuck & Co., 628 So.2d 478 (Ala.1993); Allen v. Delchamps, Inc., 624 So.2d 1065 (Ala. 1993); Kelly v. M. Trigg Enters., Inc., 605 So.2d 1185 (Ala.1992); Savage Indus., Inc. v. Duke, 598 So.2d 856 (Ala.1992); Clarke Indus., Inc. v. Home Indem. Co., 591 So.2d 458 (Ala.1991); Grose, supra; Beech v. Outboard Marine Corp., 584 So.2d 447 (Ala.1991); Yamaha Motor Co. v. Thornton, 579 So.2d 619, 621 (Ala.1991); Dunn *39 v. Wixom Bros., 493 So.2d 1356 (Ala.1986). See also Richards v. Michelin Tire Corp., 21 F.3d 1048 (11th Cir.1994), and Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465 (11th Cir.1993).
The tobacco-retailer defendants rely on "no-causal-relation" as an alternate ground for their argument that their Rule 12(b)(6) motions to dismiss were properly granted. "No-causal-relation," however, is an affirmative defense to be pleaded and proved by these defendants when the time for such pleading and proof comes. Casrell v. Altec Indus., Inc., 335 So.2d 128, 134 (Ala. 1976); and Atkins v. American Motors Corp., 335 So.2d 134, 143 (Ala.1976). The potential availability of this affirmative defense for pleading and proof in the future is immaterial to the issue of the sufficiency of the plaintiff's complaint as it must be judged now.
Each sale of cigarettes to Kalen may be the basis for a distinct cause of action on each theory against each retailer: (1) that the retailer sold an unreasonably dangerous product to Kalen, (2) that the retailer negligently sold cigarettes to him, and (3) that the retailer wantonly sold cigarettes to him. Obviously no statutory period of limitation for a cause of action based on a particular sale can have begun running before the sale itself occurred.
No statutory period of limitation on any cause of action based on a sale began running until the first damage caused by that particular sale accrued. Damage of whatever kind (even addiction if it be deemed damage) preexisting a sale would obviously not be the proximate result of that sale. Therefore, the accrual of any damage before a sale has not started the running of any period of limitation on any cause of action based on that sale. When damage first has been proximately caused by any particular sale which occurred after Kalen became addicted, remains to be proved. Therefore, no statute of limitation can constitute ground for affirming the Rule 12(b)(6) dismissal of any cause of action based on a sale which occurred after Kalen became addicted.
NOTES
[1] Because the certified question asks whether there is "any potential cause of action," we do not address any affirmative defenses that might be raised against such actions (e.g., statute of limitations, no causal relation) or arguments that might then be used against those defenses (e.g., a retailers' or pharmacists' "superior knowledge" of a product's dangerousness). Such defenses and counterarguments are not relevant to the threshold question whether under Alabama law there exist any viable claims against retailers of tobacco products.
[2] On the same day, this Court heard oral argument in a related case, Spain v. Brown & Williamson Tobacco Corp., 230 F.3d 1300 (11th Cir.2000), in which the United States Court of Appeals for the Eleventh Circuit certified several questions to this Court (before the question in this case was certified) pertaining to the liability of manufacturers of cigarettes and to whether cigarettes are unreasonably dangerous as a matter of Alabama law. See Spain, 230 F.3d at 1312.
[3] The original defendants named in the complaint in this case were R.J. Reynolds Tobacco Co.; RJR Nabisco, Inc.; Winn-Dixie of Montgomery, Inc.; Food World; Racetrac Petroleum, Inc.; and five individuals, all Alabama residents and current or former employees of R.J. Reynolds Tobacco Co.
[4] According to the Eleventh Circuit Court of Appeals' opinion, Kalen Tillman alleged that he

"began smoking in 1968 at the age of 12, more than two years after the Surgeon General's warnings were required to be placed on every package of cigarettes sold in the United States and four years after the Surgeon General's 1964 report on the adverse health effects of smoking. Plaintiff alleges Tillman became `addicted' to nicotine at an early age and was a multi-pack a day smoker."
253 F.3d at 1304.
[5] Comment i. to § 402A, Restatement (Second) of Torts (1965), reads in its entirety:

"Unreasonably dangerous. The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. This is not what is meant by `unreasonably dangerous' in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous. Good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks; but bad butter, contaminated with poisonous fish oil, is unreasonably dangerous."
(Emphasis added.)
[6] As early as 1900, the United States Supreme Court, although refusing to take judicial notice of any "special injury" resulting from the use of cigarettes, recognized that "a belief in their deleterious effects, particularly upon young people, has become very general." Austin v. Tennessee, 179 U.S. 343, 348, 21 S.Ct. 132, 45 L.Ed. 224 (1900) (emphasis added). It is probably safe to say that the belief in the dangers of cigarette smoking has not diminished or weakened in the 103 years since Austin was decided.
[7] Even if a cigarette smoker, such as Kalen Tillman, lacks the objective "ordinary knowledge" regarding the dangers of cigarettes, such a smoker need only read for himself or herself the mandatory surgeon general's warning on the cigarette package that expressly warns the user of the dangerous "characteristics" of cigarettes. Thus, the subjective ignorance of a cigarette smoker is irrelevant to a determination of the product's dangerousness. See, e.g., Deere, 586 So.2d at 198 ("ordinary consumer" standard is an objective test).
[8] 15 U.S.C. § 1333(a) provides:

"(1) It shall be unlawful for any person to manufacture, package, or import for sale or distribution within the United States any cigarettes the package of which fails to bear, in accordance with the requirements of this section, one of the following labels:
"SURGEON GENERAL'S WARNING: Smoking Causes Lung Cancer, Heart Disease, Emphysema, And May Complicate Pregnancy.
"SURGEON GENERAL'S WARNING: Quitting Smoking Now Greatly Reduces Serious Risks to Your Health.
"SURGEON GENERAL'S WARNING: Smoking By Pregnant Women May Result in Fetal Injury, Premature Birth, And Low Birth Weight.
"SURGEON GENERAL'S WARNING: Cigarette Smoke Contains Carbon Monoxide."