[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 29, 2004
THOMAS K. KAHN
CLERK

_____

No. 99-15021

_____

D. C. Docket No. 99-02424-CV-AR-S

PAUL L. SPAIN, as Administrator of the
Estate of Carolyn Watts Spain, Deceased,

Plaintiff-Appellant,

versus

BROWN & WILLIAMSON TOBACCO CORPORATION,
PHILIP MORRIS USA, INC.,
R.J. REYNOLDS TOBACCO COMPANY, INC., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(March 29, 2004)

Before CARNES, MARCUS and FARRIS[*], Circuit Judges.

CARNES, Circuit Judge:

After briefing and oral argument in this cigarette product liability case, we certified issues of state law to the Alabama Supreme Court. Spain v. Brown & Williamson Tobacco Corp., 230 F.3d 1300, 1312 (11th Cir. 2000). That Court has now issued its opinion in response to our certification request, an opinion which addresses three of the most important state law issues. Spain v. Brown & Williamson Tobacco Corp., __ So.2d __, 2003 WL 21489727 (Ala. June 30, 2003). The unsettled nature and difficulty of those issues of state law, and the correctness of our decision to certify them, is evidenced by the division of the Alabama Supreme Court that is reflected in a multitude of separate concurring and dissenting opinions and statements. We are grateful to the Alabama Supreme Court for the valuable guidance that it has provided us both in the decision it issued in this case and also in the other decision it released on the same day in a similar tobacco case where related state law issues had been certified by another panel of this Court. See Tillman v. R.J. Reynolds Tobacco Co., ___ So. 2d ___, 2003 WL 21489707, at *2 (Ala. June 30, 2003). Before applying that guidance to the issues

_____

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

2

in this appeal, a brief background statement and discussion of some general matters will be helpful.

## I. BACKGROUND

Because we are reviewing a dismissal pursuant to Fed. R. Civ. P. 12(b)(6), we take the facts from the allegations in the complaint, assuming those allegations to be true. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). Those alleged facts are that Carolyn Watts Spain started smoking cigarettes as a teenager in 1962. She became addicted to nicotine early on and was unaware at the time that she was becoming addicted. She primarily smoked cigarettes manufactured by defendants Philip Morris USA, Inc., R.J. Reynolds Tobacco Company, and Brown & Williamson Tobacco Corporation. Smoking was the proximate cause of her lung cancer, which was diagnosed on August 15, 1998. Unable to stop, she continued smoking until 1999 and died sometime during that year. See Spain, 230 F.3d at 1303.

Less than one year after Carolyn Spain died, her widower Paul L. Spain brought this lawsuit pursuant to Alabama's Wrongful Death Act, Ala. Code § 6-5-410. That act authorizes lawful representatives of a decedent to bring claims on the decedent's behalf within two years of death, provided that the statute of limitations had not run on the claims before the date of death. See Hall v. Chi, 782

3

So. 2d 218, 221 (Ala. 2000). This means that for a period of two years after her death Spain may bring whatever claims his wife could have brought on the date of her death. It also means that Spain himself is barred from bringing any claim that she would have been barred from bringing.

Spain's complaint asserts claims against a number of defendants, three of whom, all cigarette manufacturers, are the appellees in this case. (He also raised claims against individuals and retailers, but they are not involved in this appeal.) The claims against these three manufacturers are organized around five causes of action: (1) liability under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD); (2) negligence; (3) wantonness; (4) breach of implied warranty; and, (5) conspiracy. The defendant manufacturers have responded with three defenses that potentially cut across all of Spain's claims: statute of limitations; rule of repose; and, federal law preemption. They also raise other defenses specific to certain claims.

## II. GENERAL MATTERS

Before we start addressing the individual claims and related defenses, it will be helpful to get a few general matters out of the way. The first is the standard of review, which is well settled. "We review de novo the district court's grant of a motion to dismiss under [Rule] 12(b)(6) for failure to state a claim, accepting the

allegations in the complaint as true and construing them in the light most favorable to the plaintiff." Hill, 321 F.3d at 1335. "The standard of review for a motion to dismiss is the same for the appellate court as it was for the trial court." Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). A motion to dismiss is granted only when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); see also Flint v. ABB, Inc., 337 F.3d 1326, 1328-29 (11th Cir. 2003).

Another general matter involves the decision of state law issues. With the exception of the federal law preemption questions, the issues in this case all involve matters of state law. "In rendering a decision based on state substantive law, [we] must decide the case the way it appears the state's highest court would." Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1290 (11th Cir. 2001) (internal quotation marks and citation omitted).

Because the resolution of the state law issues could have avoided the need to decide the federal law preemption questions in this case, we thought it a good idea to certify the former to the Alabama Supreme Court before deciding the latter. See Spain, 230 F.3d at 1305. Now that we have the Alabama Supreme Court's answers to some of the state law issues, it is apparent that federal preemption

questions must be decided. After having worked through the remaining questions a number of ways, we believe that the clearest way to explain the results we reach is to begin our analysis with the three defenses that potentially cut across all of Spain's claims, including the federal one, and then deal with each individual claim in turn. We will address the three broad defenses in this order: the statutes of limitation, the rule of repose, and federal law preemption.

### III. THE STATUTES OF LIMITATIONS

As for the statutes of limitations, the defendants contend that all of Spain's claims are barred by them, while Spain argues that none of the claims is barred. The exact date of Carolyn Spain's death in 1999 and whether she continued to smoke until her death are facts not explicitly addressed in the complaint. It does allege that she continued to smoke "until 1999" and that she died sometime before the filing of the complaint on August 5, 1999. The most we can tell from the complaint about the date of her death is that it was sometime between January 1, 1999 and August 5, 1999.[1] That is enough to determine whether the claims survive the statutes of limitations and rule of repose. To the extent that a more specific date of death is needed on remand, the district court can determine it.

---

[1] Our first opinion in this case states that "[a]bout the date of her death, we know only that she died sometime between the diagnosis of lung cancer on August 15, 1998 and the filing of the complaint in this case on August 5, 1999." Spain, 230 F.3d at 1303 n.1. Actually, the complaint alleges that "Carolyn Watts Spain . . . continued to smoke until 1999."

The parties agree that the AEMLD, negligence, wantonness, and conspiracy claims are subject to a two year statute of limitations, Ala. Code § 6-2-38, and that the breach of implied warranty claim is subject to a four year statute of limitations, Ala. Code § 7-2-725. What was not clear, prior to the Alabama Supreme Court's decision in this case, was when the statutes of limitations began to run. That is why we certified the following question: "When does the Alabama statute of limitations for claims brought under the AEMLD, and claims premised on negligence, wantonness, breach of warranty and conspiracy begin to run in a smoking products liability case?" Spain, 230 F.3d at 1312. We will now apply the Alabama Supreme Court's answer to the claims in this case, beginning with the tort claims: AEMLD, negligence, wantonness, and conspiracy. Then we can apply it to Spain's breach of implied warranty claim.

## A. THE AEMLD, NEGLIGENCE, WANTONNESS, AND CONSPIRACY CLAIMS

In response to our certified question asking when the statute of limitations began to run on Spain's AEMLD, negligence, wantonness, and conspiracy claims, the Alabama Supreme Court held that "[t]he date Carolyn became addicted to

nicotine is the date the statutory limitations period began to run as to Spain's tort claims."[2] Id. at *11.

A plurality of the Alabama Supreme Court also concluded that the continuing-tort doctrine causes a new limitations period to run every time a defendant commits a new tortious act which causes injury to the plaintiff. Id. As a result: "[w]here multiple acts are involved, subsequent damages have been recognized as flowing from subsequent acts, and the fact that a limitations period may have expired as to an earlier act does not bar an action for the subsequent injury." Id. at *12. Specific to this case, the plurality recognized that under the

---

[2] This statement is within Part II.A of the per curiam opinion, in which Justices Houston and Lyons and Special Justice Maddox concurred, Spain, 2003 WL 21489727, at *13. Justices Brown, id. at *14, and Stuart, id. at *36, also concurred in the holding that the statute of limitations began to run when Carolyn became addicted to cigarettes. Hence, five of the nine Justices hearing the case agreed on this point.

We are aware that Part II.A of the per curiam opinion also provides what appears to be a second and conflicting standard for determining when Spain's tort claims accrued, stating that "the statutory limitations period begins to run at the moment a smoker recognizes that he or she has become addicted." Id. at *12 (emphasis added). However, only Justices Houston and Lyons and Special Justice Maddox concurred in that formulation. Id. at *13. Justice Brown concurred "only in the result in Part II.A . . . that holds that the statutory period of limitations began to run when Carolyn Spain became addicted to cigarettes." Id. at *14. Justice Stuart also concurred that "the statutory limitations period began to run at the time the plaintiff became addicted to cigarettes." Id. at *36. The other four Justices either dissented from that part of the opinion or expressed no view. The net result is that the statute of limitations for Spain's tort claims began to run on the date that Carolyn Spain "became" addicted to cigarettes, not on the date she "recognized" that she was addicted. See Marks v. United States, 430 U.S. 188, 193, 97 S. Ct. 990, 993 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." (internal quotation marks and citation omitted)).

8

continuing tort doctrine, "a new period of limitations for subsequent sales [of cigarettes] to an . . . addict . . . may produce additional injuries giving rise to new causes of action with new limitations periods . . . ." Id.  Therefore, although the statute of limitations first began to run on the date that Carolyn Spain became addicted to cigarettes, with each additional sale of cigarettes a new statute of limitations period begins as to any injuries sustained as a result of the sale.[3]

As we have already noted, under Alabama's Wrongful Death Act, Ala. Code § 6-5-410, Spain is barred from bringing claims that his wife would have been barred from bringing under the requisite statute of limitations on the date of her

---

[3] The plurality that joined this part of the decision consists of Justices Houston and Lyons and Special Justice Maddox joining Part II.A, Spain, 2003 WL 21489727, at *13, and Justice Johnstone separately concurring as to application of the continuing tort doctrine in this regard, id. at *14.

The Alabama Supreme Court has questioned the precedential value of plurality opinions. See Ex parte State ex rel. James v. ACLU of Alabama, 711 So. 2d 952, 964 (Ala. 1998) ("no appellate pronouncement becomes binding on inferior courts unless it has the concurrence of a majority of the Judges or Justices qualified to decide the cause").  And, in a related context, we have recognized that United States Supreme Court plurality opinions are not binding on us. See United States v. Miller, 255 F.3d 1282, 1288 n.4 (11th Cir. 2001); United States v. Stewart, 65 F.3d 918, 924 (11th Cir. 1995).  Nonetheless, we have decided to follow the judgment of a plurality of the Alabama Supreme Court on this issue.  The plurality opinion, which relies on a number of relevant decisions of that Court, is the best indication we have as to the law of Alabama.  The Justices who did not join the plurality on this issue either did not speak to it or they disagreed without providing any counter-thoughts, analysis, or citations to support their views.  Finally, the Alabama Supreme Court has applied the continuing tort doctrine in various other contexts in the past, which suggests that its application is appropriate here as well.  See Spain, 2003 WL 21489727, at *12 (citing Employers Ins. Co. of Alabama v. Rives, 87 So. 2d 653, 656-57 (Ala. 1955) (repetitive acts); Howell v. City of Dothan, 174 So. 624, 628 (Ala. 1937) (ongoing discharge of sewage); Alabama Fuel & Iron Co. v. Vaughn, 83 So. 323, 324 (Ala. 1919) (damage resulting from the ongoing operations of a coal mine)).

9

death. Therefore, applying a two year statute of limitations and the continuing tort doctrine together, the AEMLD, negligence, wantonness, and conspiracy claims arising more than two years before the date of her death are barred by the two year statute of limitations. Those that arose within two years of her death are not time-barred.

## B. THE BREACH OF IMPLIED WARRANTY CLAIM

A majority of the Alabama Supreme Court Justices applied the statute of limitations for Spain's breach of implied warranty claim in the same manner the plurality applied the statute of limitations to his AEMLD, negligence, wantonness, and conspiracy claims. The only difference in the analysis is that the breach of implied warranty claim falls under a four year statute of limitations. Ala. Code § 7-2-725.

Specifically, five Justices joined that part of the per curiam opinion which stated that:

> The applicable statute of limitations for a claim for breach of implied warranty is set forth in § 7-2-725 . . . which provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued," and that "a cause of action for damages for injury to the person in the case of consumer goods shall accrue when the injury occurs."

Spain, 2003 WL 21489727, at *12 (internal citations omitted); id. at *13 (Chief Justice Moore and Justices Houston, Lyons and Harwood concurring in Part II.B);

10

id. at \*14 (Justice Johnstone concurring in the quoted language). A majority of the Justices also recognized that during the last four years of her life Carolyn Spain could have incurred injuries from breach of implied warranty, and the statute of limitations would run from the date of each injury. Id. at \*12 ("Under [Ala. Code] § 7-2-725, any injury occurring from the breach of an implied warranty within the four-year period before Carolyn's death . . . would be actionable."); id. at \*13 (Chief Justice Moore and Justices Houston, Lyons and Harwood concurring in Part II.B, which includes the quoted language); id. at \*15 (Justice Johnstone concurring in the quoted language); and id. at \*36 (Justice Woodhall concurring in the result as to the quoted language). Implicit in that recognition is the principle that each sale leads to a new breach of implied warranty injury, just as each sale kicks in the operation of the continuing tort doctrine for the AEMLD, negligence, wantonness, and conspiracy claims.

For these reasons, Spain's breach of implied warranty claim is not barred by the statute of limitations for any injuries that occurred within four years before the actual date of Carolyn Spain's death. It does bar the claim insofar as it concerns any injuries arising earlier than four years before her death.

11

# IV.  THE RULE OF REPOSE

The second broad defense that potentially affects all of the claims is the rule of repose.  In the interest of fairness, judicial efficiency, and for the benefit of society, Alabama's rule of repose extinguishes claims 20 years after they could have been brought.  Ex parte Liberty Nat'l Life Ins. Co., 825 So. 2d 758, 763 (Ala. 2002).  Although similar in concept, the rule of repose differs from a statute of limitations in two significant ways.  First, it "is based solely upon the passage of time . . . and is not based upon concepts of accrual, notice, or discovery – concepts that are applicable to statutes of limitation."  Id. at 764 (citation omitted).  "Therefore, the 20-year period begins to run against claims the first time those claims could have been asserted, regardless of the claimant's notice of a claim."  Id. (footnotes omitted).  Second, the rule of repose "is broader than a statute of limitations in that '[w]hile a statute of limitations generally is procedural and extinguishes the remedy rather than the right, . . . repose is substantive and extinguishes both the remedy and the actual action.'"  Id. at 765 (citation omitted).

In our prior opinion, we asked the Alabama Supreme Court whether "the Alabama rule of repose appl[ies] in . . . smoking products liability case[s]."  Spain, 230 F.3d at 1312.  The Supreme Court for prudential reasons declined to answer our question, as it had every right to do.  After reflection, we have decided that we,

12

too, should decline to answer that question. The reason is that the result we have already reached about the statutes of limitations renders any rule of repose questions moot. As we have just discussed, a plurality of the Alabama Supreme Court – whose conclusion we have chosen to follow – explained that "subsequent sales to an admitted addict of additional packs of cigarettes . . . may produce additional injuries giving rise to new causes of action. . . ." Spain, 2003 WL 21489727, at *12. Each subsequent injury starts a new statute of limitations. Id.

The same reasoning dictates that each subsequent injury that starts a new two or four year statute of limitations running also starts a new 20 year repose period going. While the rule of repose, if it does apply to smoking products liability cases, would bar Spain's claim for his wife's initial addiction, which occurred in the 1960s, it would not bar his claims for her subsequent injuries, which allegedly arose from the additional sales of cigarettes to her in the 20 years preceding her death. The result is that if Spain's claims are not barred by the shorter applicable statutes of limitations, they are not barred by the longer rule of repose either. If the claims are barred by the statutes of limitations, then the rule of repose is irrelevant to the result. Either way, the rule of repose drops out of the case. The federal preemption doctrine, however, does not.

## V.  OVERVIEW OF FEDERAL PREEMPTION

The preemption clause in the Federal Cigarette Labeling and Advertising Act of 1965, § 5(b), as amended by the Public Health Cigarette Smoking Act of 1969, and codified at 15 U.S.C. § 1334(b), states:  "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are [lawfully] labeled . . . ."  15 U.S.C. § 1334(b).  In our first opinion in this case, we reserved the question of whether the Labeling Act's preemption clause preempted any of Spain's state law claims.  Spain, 230 F.3d at 1304-05.

The most applicable Supreme Court preemption decision is Cipollone v. Liggett Group, Inc., 505 U.S. 504, 112 S. Ct. 2608 (1992).  Unfortunately, none of the opinions in that case garnered a majority.  Three Justices expressed the view that no state common law claims are preempted by § 1334(b), because the Labeling Act, both before and after the 1969 amendment, fails to provide "the kind of unambiguous evidence of congressional intent necessary to displace state common-law damages claims."  Cipollone, 505 U.S. at 531, 112 S. Ct. at 2625 (setting out the quoted language); id. at 531-44, 112 S. Ct. at 2625-32 (Blackmun, J., joined by Kennedy and Souter, JJ., concurring in part, concurring in the judgment in part, and dissenting in part).  Two Justices strongly disagreed and took

the position that all common law claims against cigarette makers for smoking-related injuries and deaths are preempted by the Labeling Act. Id. at 544-56, 112 S. Ct. at 2632-38 (Scalia, J., joined by Thomas, J., concurring in the judgment in part and dissenting in part).

A four Justice plurality, taking the middle ground, concluded that Congress' intent, based on the language in the preemption clause, was to preempt some state law damages actions but not others. Id. at 520-24, 112 S. Ct. at 2619-21 (Stevens, J., joined by Rehnquist, CJ., White and O'Connor, JJ). The plurality developed a preemption test that asks: "whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion,' giving that clause a fair but narrow reading." Id. at 524, 112 S. Ct. at 2621 (quoting the preemption clause from the federal Labeling Act, codified at 15 U.S.C. § 1334(b)).

The plurality's test and its underlying reasoning were applied to each of the Cipollone plaintiff's claims. Whenever the plurality concluded that the claims were preempted, Justice Scalia and Justice Thomas joined in the result. Whenever the plurality concluded that the plaintiff's claims were not preempted, Justice Blackmun, Justice Kennedy, and Justice Souter joined in the result. Over the

15

years, other courts have treated the plurality opinion in <u>Cipollone</u> as if it were a majority opinion,[4] and we join them today, much as we indicated we would in our prior opinion in this case, <u>see</u> <u>Spain</u>, 230 F.3d at 1304-05. Because of the importance of the plurality's analysis, we take this opportunity to briefly discuss its application of the preemption test to the plaintiff's claims in <u>Cipollone</u>.

The <u>Cipollone</u> plurality concluded that Congress' intent in amending the Labeling Act in 1969 to include the preemption clause, which we quoted at the top of this section, was to preempt state law claims premised upon a failure to warn through advertisement: "insofar as claims under [a] failure-to-warn theory require a showing that . . . post-1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims are pre-empted." <u>Id.</u> at

---

[4] While we recognize that we are not bound to follow the preemption test adopted by the four Justice plurality opinion, <u>see</u> <u>United States v. Stewart</u>, 65 F.3d 918, 924 (11th Cir. 1995), we are in good company in deciding to do so. <u>See</u> <u>Michael v. Shiley, Inc.</u>, 46 F.3d 1316, 1322 n.3 (3d Cir. 1995) ("We recognize that <u>Cipollone</u> was decided by a plurality of the Supreme Court. We are satisfied that the preemption discussion and holding represents the Court's current pre-emption analysis."), <u>overruled on other grounds</u>, <u>Medtronic, Inc. v. Lohr</u>, 518 U.S. 470, 116 S. Ct. 2240 (1996); <u>Philip Morris Inc. v. Harshbarger</u>, 122 F.3d 58, 69-70 (1st Cir. 1997) (adopting the <u>Cipollone</u> plurality's preemption test and applying it to a state statute requiring manufacturers of tobacco products to disclose additives and nicotine-yield ratings of their products); <u>Lacey v. Lorillard Tobacco Co., Inc.</u>, 956 F. Supp. 956, 960 (N.D. Ala. 1997) ("this court will also treat the entire <u>Cipollone</u> opinion, including the plurality portions, as the holding of the Court"); <u>Cantley v. Lorillard Tobacco Company, Inc.</u>, 681 So. 2d 1057, 1061 (Ala. 1996) ("After considering the several <u>Cipollone</u> opinions as a whole, we, like the majority of other courts that have attempted to apply the <u>Cipollone</u> holding, feel compelled to apply the test and reasoning enunciated by Justice Stevens in the plurality portion of his opinion."); <u>see also</u> <u>MacDonald v. Monsanto Co.</u>, 27 F.3d 1021, 1024 n.1 (5th Cir. 1994) ("[T]he holding of the plurality opinion [in <u>Cipollone</u>] that the language of § 1334(b) preempted the plaintiff's failure-to-warn claim can fairly be said to constitute the view of the Court because six members of the Court concurred in that conclusion.").

524, 112 S. Ct. at 2621. But the plurality found that the Cipollone plaintiff's post-1969 claims of failure to warn based solely on the defendant cigarette manufacturers' "testing or research practices or other actions unrelated to advertising or promotion" were not preempted. Id. at 524-25, 112 S. Ct. at 2621-22.

The plurality also found that the Cipollone plaintiff's state law breach of express warranty claims were not preempted, regardless of whether the terms of warranty were set forth in advertisements rather than in separate documents, because "'requirement[s]' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed by the warrantor." Id. at 525, 112 S. Ct. at 2622. "If, for example, a manufacturer expressly promised to pay a smoker's medical bills if she contracted emphysema, the duty to honor that promise could not fairly be said to be 'imposed under state law,' but rather is best understood as undertaken by the manufacturer itself." Id. at 525-26, 112 S. Ct. at 2622.

The Cipollone plaintiff also alleged fraudulent misrepresentation, stating that the defendants' advertising neutralized the effect of federally mandated warning labels by portraying cigarette smoking as related to glamour, romance, youthfulness, and happiness. The plurality determined that claim was preempted for the same reasons the plaintiff's failure to warn claims based upon advertising

were preempted, namely, they rely on a state law requirement or prohibition with respect to advertising or promotion.  Id. at 527-28, 112 S. Ct. at 2623.

However, the plurality concluded that the Cipollone plaintiff's second fraudulent misrepresentation claim, which in part alleged that the defendants had made false statements in their advertisements, was not preempted because it was predicated on a duty not to deceive, instead of on a duty specific to smoking and health.  Id. at 528-29, 112 S. Ct. at 2623-24.  Said the plurality: "Congress offered no sign that it wished to insulate cigarette manufacturers from longstanding rules governing fraud."  Id. at 529, 112 S. Ct. at 2624.

Finally, the Cipollone plurality addressed the plaintiff's conspiracy to misrepresent or conceal material facts claim.  Like the second fraudulent misrepresentation claim, the predicate of the conspiracy claim was "a duty not to conspire to commit fraud."  Id. at 530, 112 S. Ct. at 2624.  The plurality concluded that because the conspiracy claim was not grounded on a state law requirement or prohibition with respect to advertising, but rather on a state law prohibition against conspiring to commit fraud, it was not preempted.  Id. at 530, 112 S. Ct. at 2624-25.

As our discussion hopefully makes clear, under Cipollone whether a state law claim is preempted is dependent on the exact nature of that particular claim.

18

We turn now to a closer examination of the claims in this case, applying the preemption doctrine, as well as the statute of limitations principles we discussed earlier in this opinion, to each one.

## VI.  THE AEMLD CLAIMS

The Alabama Supreme Court developed the Alabama Extended Manufacturer's Liability Doctrine in Casrell v. Altec Industries, Inc., 335 So. 2d 128 (Ala. 1976), and Atkins v. American Motors Corp., 335 So. 2d 134 (Ala. 1976).  It recently reiterated the three elements of that doctrine in another smoking products liability case:  "To establish liability under the AEMLD, a plaintiff must show '[1] that an injury was caused by one who sold a product in a defective condition that made the product unreasonably dangerous to the ultimate user or consumer; [2] that the seller was engaged in the business of selling such a product; and [3] that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold.'"  Tillman, 2003 WL 21489707, at *2 (emphasis omitted, quoting Bell v. T.R. Miller Mill Co., 768 So. 2d 953, 957 (Ala. 2000)).  The only element at issue here is whether cigarettes are an unreasonably dangerous product.

The Alabama Supreme Court has explained that in determining whether a product is unreasonably dangerous, we focus on "whether it is safe or dangerous

19

when the product is used as it was intended to be used." Id. at *2 (quoting Casrell, 335 So. 2d at 133). To prove that a product is unreasonably dangerous, the plaintiff must demonstrate that "the product fails to meet the reasonable safety expectations of an 'ordinary consumer,' that is, an objective 'ordinary consumer,' possessed of the ordinary knowledge common to the community." Deere & Co. v. Grose, 586 So. 2d 196, 198 (Ala. 1991) (citation omitted). Because "knowledge common to the community" is the measure, the Alabama Supreme Court has held that "danger may be obviated by an adequate warning." Casrell, 335 So. 2d at 133; see also Tillman, 2003 WL 21489707, at *2 (quoting Casrell).

Although the Alabama Supreme Court declined to answer our certified question in this case about whether cigarettes are an unreasonably dangerous product under the AEMLD, it did respond to a similar question another panel of this Court certified in Tillman v. R.J. Reynolds Tobacco Co., 253 F.3d 1302, 1307-08 (11th Cir. 2001). Three Justices responded that: "an AEMLD claim against retailers of cigarettes fails because (1) cigarettes are not an unreasonably dangerous product under the AEMLD; and (2) even if they were, the current warnings on cigarette packages regarding cigarette smoking obviate any unreasonable danger posed by the cigarettes." Tillman, 2003 WL 21489707, at *4 (setting out quoted language); id. at *5 (Houston, Harwood, and See, JJ. concurring in Part II.A, which

20

contains the quoted language). Three other Justices concurred in the conclusion that the Tillman plaintiff did not state a claim under the AEMLD against the retailer defendants. Id. at *5. Of course, the present case involves cigarette manufacturers, not retailers, and so Tillman is not controlling.

Nonetheless, we conclude that the ordinary cigarette consumer, with access to knowledge common to the community, could not be unaware of the dangers of smoking at least as late as the 1990s, which is the relevant period in this case after due regard is given to operation of the statutes of limitations. He or she could not be unaware given the existence of the Surgeon General's warning dating back to 1965 and the extensive evidence of the dangers of smoking. See Food & Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 138, 120 S. Ct. 1291, 1303 (2000) (finding that when Congress enacted various tobacco-related legislation from 1965 through 1992 "the adverse health consequences of tobacco use were well known, as were nicotine's pharmacological effects"); Cipollone, 505 U.S. at 513-14, 112 S. Ct. at 2615-16; Tillman, 2003 WL 21489707, at *3; see also Johnson v. Brown & Williamson Tobacco Corp., 122 F. Supp. 2d 194, 204 (D. Mass. 2000) ("this Court is firmly convinced that the risks of smoking were quite clear to the population at large before 1969"); Guilbeault v. R.J. Reynolds Tobacco Co., 84 F. Supp. 2d 263, 273 (D. R.I. 2000) (taking judicial notice of "the

21

community's common knowledge of the general disease-related health risks associated with smoking, including the risk of contracting cancer, as of 1964"); Paugh v. R.J. Reynolds Tobacco Co., 834 F. Supp. 228, 231 (N.D. Ohio 1993) ("[T]he risks of smoking are an inherent characteristic of cigarettes, and . . . knowledge of these risks has been common to the community since well before 1966."). Accordingly, Spain's AEMLD claims are foreclosed as a matter of Alabama law.

## VII. THE NEGLIGENCE AND WANTONNESS CLAIMS

### A. THE NATURE OF THE CLAIMS

We turn now to the negligence and wantonness claims, which we consider together. The complaint broadly alleges that the defendants negligently failed to warn consumers about the dangers of their cigarettes, and that they negligently and wantonly designed, manufactured, marketed, and sold cigarettes that were unreasonably dangerous to consumers. To the extent those claims arose more than two years before Carolyn Spain's death, they are barred by the statute of limitations for reasons we have already discussed.

We also note that the allegations of negligent and wanton marketing are subsumed by the other negligence and wantonness claims. The complaint either uses "marketing" in the advertising sense, and so the claim falls within the

22

negligent failure to warn allegation; or it uses "marketing" in the sense of designing, manufacturing, and placing a product into commerce, and so falls within the negligent and wanton design and manufacture allegations. Either way, there is no need to discuss the negligent and wanton marketing claims separately.

Likewise, there is no need to discuss separately Spain's allegation that the defendants negligently and wantonly sold cigarettes to consumers, including Carolyn Spain. In addition to the cigarette manufacturer defendants, the only defendants who are now before this Court, Spain originally named individuals and cigarette retailers as defendants. Spain's claim that the defendants negligently and wantonly sold cigarettes may make sense against a retailer defendant. In that situation, Spain would be alleging that a retailer defendant failed in its duty to inspect its product or ensure that the product it sold was safe for use by a consumer.

Insofar as manufacturers are concerned, however, Spain's negligent and wanton sale allegations do not make sense as a separate claim. Failure to inspect is inherent in a claim of negligent and wanton manufacture, because manufacturing is the sum total of the processing of the product prior to its release into the stream of commerce and includes inspection. Thus, any claim alleging negligent and wanton sale by a manufacturer defendant is necessarily subsumed by a claim alleging

23

negligent and wanton manufacture. For these reasons, in the context of the manufacturer defendants now before us, we fail to see how a claim for negligent and wanton sale differs from a claim for negligent and wanton design and manufacture. We will discuss it no further except to note now that what we say about the latter applies to the former as well.

This means that insofar as negligence and wantonness are concerned, we are left with those claims, arising within two years of Carolyn Spain's death, that the defendants negligently failed to warn consumers of the dangers of smoking and that they negligently and wantonly designed and manufactured their cigarettes.

B. THE DEFENDANTS' ARGUMENT

After we received the Alabama Supreme Court's response to our certified questions, we asked the parties to submit supplemental briefs addressing the question of what this Court should do in light of that response. In relation to Spain's negligence and wantonness claims, the defendants responded that because those claims and the AEMLD claims are based on the same factual allegations and same theory of liability, namely that cigarettes are unreasonably dangerous to consumers, Spain's negligence and wantonness claims fail for the same reason his AEMLD claims fail, which is that cigarettes are not unreasonably dangerous when used for their intended purpose.

In our prior opinion in this case, we accepted the defendants' argument that because Spain's negligence and wantonness claims were based on the same underlying allegations as his AEMLD claims they merged with his AEMLD claims as a matter of Alabama law. Spain, 230 F.3d at 1310. As part of our certification to the Alabama Supreme Court, we invited it to tell us if we were wrong about that. Id. at 1310, 1312. It did, and we were.[5] Since the Alabama Supreme Court has instructed us that Spain's negligence and wantonness claims are not subsumed by his AEMLD claims, we will not affirm the dismissal of Spain's negligence and wantonness claims purely on the basis that his AEMLD claims fail. Defendants have not even attempted to persuade us that Spain's independent claims involving negligence and wantonness fail on their own merits. Instead, they hitched their negligence and wantonness defense wagon to the merits of their AEMLD defense.

Despite this, the defendants ultimately prevail on Spain's negligent failure to warn claim as that claim does not survive federal preemption, for reasons we are

---

[5] The Supreme Court explained that "AEMLD . . . is a judicially created accommodation of Alabama law to the doctrine of strict liability for damage or injuries caused by allegedly defective products. We cannot deduce from this Court's announcement of the AEMLD . . . that the common law was thereby abrogated by negative inference. . . . Spain's negligence and wantonness claims are, at this stage of the proceedings, viable alternatives to his AEMLD claim." Spain, 2003 WL 21489727, at *3 (internal quotation marks and citation omitted); id. at *13 (Moore, C.J., Houston, Lyons, Brown, Harwood and Woodall, JJ., concurring in Part I.A); id. at *14 (Johnstone, J., concurring in the holding that "Spain's negligence and wantonness claims are, at this stage of the proceedings, viable alternatives to his AEMLD claim"). We gratefully accept this correction.

25

about to explain.  On the other hand, the defendants do lose, at least at this stage, on Spain's negligent and wanton design and manufacture claims.

## C.  FEDERAL PREEMPTION APPLIED

Cipollone's federal preemption test asks: "whether the legal duty that is the predicate of the common-law damages action constitutes a requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion, giving that clause a fair but narrow reading."  505 U.S. at 524, 112 S. Ct. at 2621 (four Justice plurality, internal quotation marks omitted).  It is this test that we will apply first to Spain's failure to warn claim and then to his negligent and wanton design and manufacture claims.

### 1. The Negligent Failure to Warn Claim

The Alabama Supreme Court has adopted the Restatement (Second) of Torts, § 388, which sets out the elements of the failure to warn claim as follows:

> One who supplies . . . through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel . . . for physical harm caused by the use of the chattel . . ., if the supplier (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

26

Ex parte Chevron Chem. Co., 720 So. 2d 922, 924-25 (Ala. 1998) (quoting Restatement (Second) of Torts, § 388 (internal quotation marks omitted)).  "[T]he duty to warn contemplated by § 388(c) is triggered only when the supplier has 'no reason to believe' that the user will realize the 'dangerous condition' of the product . . . ."  Id. at 925; see also Gurley v. Am. Honda Motor Co., 505 So. 2d 358, 361 (Ala. 1987) (stating that "[t]here is no duty to warn of every potential danger . . ., but only a duty to warn of those dangers which the owner or user would not be aware of under the particular circumstances of his use of the product in question"); Ford Motor Co. v. Rodgers, 337 So. 2d 736, 739 (Ala. 1976) ("The objective of placing a duty to warn on the manufacturer or supplier is to inform a user of the danger [of] which he is not aware[;] therefore, there is no duty to warn when the danger is obvious.").

In Cantley v. Lorillard Tobacco Co., 681 So. 2d 1057 (Ala. 1996), the Alabama Supreme Court recognized that a manufacturer's duty to warn is in essence a duty to warn through advertising and promotion.  Spain, 230 F.3d at 1311 (citing Cantley, 681 So. 2d at 1061-62).  Given the state law premise of the Cantley decision, we are confident that the Alabama Supreme Court would hold that where a plaintiff asserts that cigarette manufacturer defendants have failed to warn consumers about the dangers of using their product, as Spain does, such a

claim in essence alleges that the defendants breached their state duty to warn through advertising and promotion. Accordingly, we conclude that such claims allege a violation of a state law requirement based on smoking and health with respect to advertising and promotion, and therefore are preempted by the federal Labeling Act. On that basis, we will affirm the district court's dismissal of Spain's negligent failure to warn claim.

### 2. The Negligent and Wanton Design and Manufacture Claims

We are now faced with the question of whether Spain's negligent and wanton design and manufacture claims are preempted by the federal Labeling Act.

To prove a prima facie claim of negligence in Alabama, "'a plaintiff must establish that the defendant breached a duty owed by the defendant to the plaintiff and that the breach proximately caused injury or damage to the plaintiff.'" Kmart Corp. v. Bassett, 769 So. 2d 282, 284 (Ala. 2000) (quoting Lowe's Home Ctrs., Inc. v. Laxson, 655 So. 2d 943, 945-46 (Ala. 1994)). "To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty . . . that . . . proximately cause[d] the injury of which the plaintiff complains." Martin v. Arnold, 643 So. 2d 564, 567 (Ala. 1994).

The Cipollone test asks whether state law imposes a requirement or prohibition, that is a duty based on smoking and health, with respect to advertising or promotion. The defendants have not provided us with any authority indicating that Alabama law imposes a duty to warn in the context of negligent and wanton design and manufacture claims. Nor have we uncovered any such authority through our own research. Accordingly, we are unable to say that Alabama law imposes on a manufacturer a duty to warn, the breach of which may result in liability for negligent and wanton design and manufacture. And that means Spain's negligent and wanton design and manufacture claims are not preempted by the federal Labeling Act. Instead, the negligent and wanton design and manufacture claims to the extent that they arose within two years of Carolyn Spain's death are viable at this stage of the proceedings.

## VIII.  THE BREACH OF IMPLIED WARRANTY CLAIM

Spain's complaint alleges that the "[d]efendants breached their expressed and/or implied warranties in that the cigarettes they sold were not reasonably fit and suitable for the purpose for which they were to be used, but, to the contrary, were in a dangerously defective and unsafe condition." Spain abandoned his express warranty claim at oral argument, and so we do not address it here. Spain, 230 F.3d at 1311 n.13. Also, as we discussed above, Spain's implied warranty

29

claim is narrowed by the statute of limitations to injuries which occurred within four years of the date of Carolyn Spain's death. With those limitations in mind, we proceed to analyze that remaining part of the implied warranty claim.

## A. STATE LAW

Alabama Code § 7-2-314, which governs the implied warranty of merchantability, provides that "[u]nless excluded or modified ([by] Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ala. Code § 7-2-314(1). In order to be merchantable, goods must be fit "for the ordinary purposes for which they are used." Allen v. Delchamps, Inc., 624 So. 2d 1065, 1068 (Ala. 1993).

In our prior opinion in this case, we asked the Alabama Supreme Court to comment on our conclusion that Spain did not state a valid claim for breach of an implied warranty of merchantability. Spain, 230 F.3d at 1310-11. It did, and disagreed with our assessment of Alabama law.

We'll skip the explanation and go straight to the bottom line of what the Alabama Supreme Court said the state law fate of this claim should be:

> In each case alleging a breach of the implied-warranty of merchantability, the determination whether there was a breach requires a fact-intensive analysis. In paragraph 21 of his complaint, Spain alleged that the cigarettes designed, manufactured, and sold by the manufacturers "were

not fit for the ordinary purposes for which they are used." Thus, he alleged a breach of the implied warranty of merchantability. Because this case is before the Eleventh Circuit on a motion to dismiss, the record before us does not contain any evidence indicating that the cigarettes smoked by Carolyn were "fit for the ordinary purposes for which they are used."

Spain, 2003 WL 21489727, at *6; id. at *13 (Moore, C.J., Lyons and Harwood, JJ., concurring in Part I.B, Houston and Brown, JJ., concurring in the result). Spain's claim for breach of implied warranty of merchantability, to the extent that it is based on injuries that occurred within four years of Carolyn Spain's death, may not be dismissed for failure to state a claim under Alabama law.

## B. FEDERAL PREEMPTION APPLIED

Whether that breach of implied warranty claim is preempted by federal law is another matter. On that subject, we turn again to the Cipollone plurality opinion. Although it did not deal with a breach of implied warranty claim, it did consider a breach of express warranty claim. As to that claim, the plurality reasoned that "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." Cipollone, 505 U.S. at 525, 112 S. Ct. at 2622. Noting the contractual nature of express warranty claims, the plurality opinion further provided that the "'requirement[s]' imposed by an express warranty claim are not 'imposed under State law,' but rather imposed by the warrantor." Id., 112 S. Ct. at 2625. Thus, "a common-law remedy for a

31

contractual commitment voluntarily undertaken should not be regarded as a 'requirement . . . imposed under State law . . . .'" Id. at 526, 112 S. Ct. at 2622 (four Justice plurality); id. at 543-44, 112 S. Ct. at 2631-32 (Blackmun, Kennedy and Souter, JJ., joining in the result).

Alabama law does impose an implied warranty of merchantability upon the sale of a good, unless the parties contract around it. Bagley v. Mazda Motor Corp., ___ So. 2d ___, 2003 WL 21040506, at *11 (Ala. May 09, 2003) ("Unless specifically disclaimed, implied warranties are created upon the sale of goods."); Cheminova Am. Corp. v. Corker, 779 So. 2d 1175, 1180 (Ala. 2000) ("A sale of a product that is not fit for use as described violates the implied warranty of merchantability – that the product is fit for its intended purpose – an implied warranty that . . . accompanies each sale by a merchant. § 7-2-314, Ala. Code 1975."). Specifically, Ala. Code § 7-2-314 provides that "[u]nless excluded or modified ([by] Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ala. Code § 7-2-314(1). Thus the implied warranty at issue here is different from the express warranty claim in Cipollone because this requirement is imposed not by the manufacturer, but by the state. See Papas v. The Upjohn Company, 985 F.2d 516, 519-20 (11th Cir. 1993) (saying that under Florida law

"implied warranties of merchantability arise by operation of law" and therefore are distinguishable from the <u>Cipollone</u> discussion of express warranties).

Because <u>Cipollone</u> did not consider the specific question that faces us now, we must look beyond its holding to the preemption test used to reach that holding. That test, yet again, is: "whether the legal duty that is the predicate of the common-law damages action constitutes a requirement or prohibition based on smoking and health . . . imposed under State law with respect to . . . advertising or promotion, giving that clause a fair but narrow reading." <u>Cipollone</u>, 505 U.S. at 524, 112 S. Ct. at 2621 (four Justice plurality, internal quotation marks omitted).

The legal duty imposed on a manufacturer through the implied warranty of merchantability is not to market a product unfit for the ordinary purpose for which it is used or to contract around the implied warranty. <u>See</u> <u>Bagley</u>, 2003 WL 21040506, at *10-12; <u>id.</u> at *11 ("[u]nless <u>specifically</u> disclaimed, implied warranties are created upon the sale of goods." (emphasis added, citing Ala. Code § 7-2-314)). There is no requirement to provide a warning.

Since Alabama law relating to the disclaimer of implied warranties does not create a duty or prohibition relating to advertising, Spain's implied warranty claim is not preempted by the federal Labeling Act. Because it survives both the state law analysis and the federal preemption analysis, the judgment dismissing this

33

claim is due to be reversed insofar as it involves injuries within four years of Carolyn Spain's death.

## IX. THE CONSPIRACY CLAIMS

Spain's complaint appears to allege three separate conspiracy claims: (1) conspiracy to fail to warn consumers about the dangers of the defendants' cigarettes; (2) conspiracy to fraudulently suppress information about those dangers; and, (3) conspiracy to fraudulently misrepresent those dangers to the public. See Spain, 230 F.3d at 1311 & n.14. "'[A] conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed. If the underlying cause of action is not viable, the conspiracy claim must also fail.'" Id. at 1311 (quoting Allied Supply Co. v. Brown, 585 So. 2d 33, 36 (Ala. 1991)). As we have discussed above, Spain's conspiracy claims are governed by the same two year statute of limitations as his tort claims. Thus, the claims under consideration are narrowed to those involving injuries arising within two years of Carolyn Spain's death.

### A. THE CONSPIRACY TO FAIL TO WARN CLAIM

Taking the claims in order, Spain's allegation of a conspiracy to fail to warn consumers about the dangers of the defendants' cigarettes is preempted by the federal Labeling Act for the same reasons that his non-conspiratorial failure to

warn claim is preempted, see Part VII.C.1 above. See Spain, 230 F.3d at 1311 ("If the underlying cause of action is not viable, the conspiracy claim must also fail." (internal quotation marks and citation omitted)).

B. THE CONSPIRACY TO FRAUDULENTLY SUPPRESS CLAIM

As for the claim of conspiracy to fraudulently suppress, our previous opinion in this case concluded that the district court had properly dismissed this claim, and offered the Alabama Supreme Court a chance to comment on the state law premises underlying that conclusion. Spain, 230 F.3d 1311-12. The Court did not comment on this issue; therefore, we hold, as we indicated that we would, that the conspiracy to fraudulently suppress claim fails. The reason is this: We agree with the Alabama Supreme Court's holding in Cantley v. Lorillard Tobacco Co., that under that state's law a fraudulent suppression claim against a cigarette manufacturer is preempted by the federal Labeling Act. 681 So.2d 1057, 1061 (Ala. 1996). It is preempted because in Alabama a cigarette manufacturer can ordinarily meet its state law duty not to fraudulently suppress information about the dangers of smoking, which equates with a duty to warn about them, only through advertising or promotion. See id.; Cipollone, 505 U.S. at 524, 112 S. Ct. at 2621 (setting out the preemption test of the four Justice plurality). Since "the

35

underlying cause of action is not viable, the conspiracy claim must also fail."

Spain, 230 F.3d at 1311 (internal quotation marks and citation omitted).

## C. THE CONSPIRACY TO FRAUDULENTLY MISREPRESENT CLAIMS

Finally, our prior opinion in this case also concluded that the district court had properly dismissed Spain's conspiracy to fraudulently misrepresent claims. There is nothing in the Alabama Supreme Court's opinion to indicate that our conclusion about this claim is incorrect, insofar as it goes.

### 1. State Law

Our prior opinion explained that Alabama law requires a plaintiff to prove the following in order to make out a fraudulent misrepresentation claim:

> A fraudulent misrepresentation claim requires a plaintiff to show: (a) that the defendant made a false misrepresentation concerning a material fact; (b) which (1) the defendant either knew was false when made, or (2) was made recklessly and without regard to its truth or falsity, or (3) was made by telling the plaintiff that the defendant had knowledge that the representation was true while not having such knowledge; (c) which the plaintiff justifiably relied upon; and (d) damage to the plaintiff proximately resulting from his reliance.

Id. at 1311 (citation omitted).

Our prior opinion focused on element (c), specifically whether Carolyn Spain could have justifiably relied on the defendants' alleged representations that cigarettes were a safe product. We reasoned that if the Alabama Supreme Court held that cigarettes are not unreasonably dangerous as a matter of Alabama law,

36

i.e., that their danger is obvious or the warning that accompanies them is adequate, then "Spain will be unable to establish Carolyn's justifiable reliance" on the defendants' misrepresentations.  Id. at 1311-12.  We explained that the result would be that the claim would fail.  Id.

In our discussion of Spain's AEMLD claims in Part VI of the present opinion, we have concluded that at least since the 1990s the dangers of cigarette smoking were well known to the ordinary cigarette consumer with access to knowledge common to the community.  Applying that conclusion here, our prior opinion was correct that Spain's conspiracy to fraudulently misrepresent claim – to the extent that it is based on the commonly known dangers of cigarettes – is foreclosed as a matter of Alabama law, because Spain cannot establish justifiable reliance.  See id. at 1311-12.

However, the conspiracy count in Spain's complaint includes the additional allegation that the defendants "deliberately added carcinogens and other harmful ingredients to cigarettes to intentionally harm . . . consumers . . . ."  The added danger incident to the alleged addition of carcinogens and other harmful ingredients would not have been well known to the ordinary cigarette consumer with access to knowledge common to the community.  Hence, this claim is not

37

foreclosed by Alabama law, insofar as Spain alleges that it occurred within the two years prior to Carolyn Spain's death.

## 2. Federal Preemption Applied

Having concluded that Spain's conspiracy to fraudulently misrepresent claim survives the state law analysis to the extent of the allegations that the defendants added carcinogens and other harmful ingredients to their cigarettes, we must decide whether that claim is preempted by the federal Labeling Act. Cipollone is particularly helpful on this point, because the plaintiff in that case put forward two fraudulent misrepresentation claims, similar to the ones here.[6] A majority of the Justices concluded that one of the plaintiff's fraudulent misrepresentation claims was preempted by the Labeling Act, and one was not.

The fraudulent misrepresentation claim that the Cipollone Court (the plurality of four Justices plus two others) held to be preempted was the claim that the defendant cigarette manufacturers "through their advertising, neutralized the effect of federally mandated warning labels." Cipollone, 505 U.S. at 527, 112 S. Ct. at 2623 (quoted language from plurality's opinion); id. at 544-56, 112 S. Ct. at

_____

[6] The elements of fraudulent misrepresentation under New Jersey law, as applied by the Supreme Court in Cipollone are: (1) a material misrepresentation of fact by false statement, (2) the defendant's knowledge of the falsity, (3) intent that the misrepresentation be relied upon, (4) justifiable reliance by the plaintiff, and (5) resulting damage, 505 U.S. at 528 n.25, 112 S. Ct. at 2623 n.25. Those elements do not differ materially from the elements of fraudulent misrepresentation under Alabama law at issue here.

2632-38 (Scalia, J., joined by Thomas, J., concurring in the part of the judgment that found the plaintiff's claims were preempted). This claim was preempted, because "[s]uch a claim is predicated on a state-law prohibition against statements in advertising and promotional materials that tend to minimize the health hazards associated with smoking." Id. at 527, 112 S. Ct. at 2623. It is nothing more than the state law prohibition converse of a requirement that warnings be included in advertising and promotional materials, and the federal Labeling Act preempts prohibitions as well as requirements. See id.

The fraudulent misrepresentation claim that the Cipollone Court (the plurality of four Justices plus three others) held not to be preempted was the claim that the defendant manufacturers misrepresented and fraudulently stated or concealed material facts about smoking and health. The Court concluded that this claim was not preempted, even to the extent it arose in relation to advertising and promotion (such as allegedly false statements of material fact made in advertisements), because "[s]uch claims are predicated not on a duty 'based on smoking and health' but rather on a more general obligation – the duty not to deceive." Id. at 528-29, 112 S. Ct. at 2623-24 (quoted language from the plurality's opinion); id. at 531-44, 112 S. Ct. at 2625-32 (Blackmun, J., joined by

Kennedy and Souter, JJ., concurring in the part of judgment that found the plaintiff's claims were not preempted).

Applying the Cipollone analysis here, we conclude that Spain's claim of conspiracy to fraudulently misrepresent the dangers of the defendants' cigarettes, insofar as it is premised upon the allegation that the defendants used advertising to neutralize the effect of federally mandated warning labels, is preempted by the Labeling Act. See Spain, 230 F.3d at 1311 ("If the underlying cause of action is not viable, the conspiracy claim must also fail." (internal quotation marks and citation omitted)). However, insofar as the claim is premised on the allegation that defendants made statements knowing their falsity, or with reckless disregard as to their truth or falsity, it is not preempted by the Labeling Act. (It is also, as we explained in the preceding subsection, limited by state law to a conspiracy involving false statements about the alleged addition of carcinogens and other harmful ingredients that would not have been well known to the ordinary cigarette consumer with access to knowledge common to the community.)

## X. SUMMARY

For these reasons, we REVERSE and REMAND for further proceedings consistent with this opinion.

On remand, the following claims are out, because they were properly dismissed: (1) AEMLD; (2) negligent failure to warn; (3) negligent and wanton marketing, to the extent that the complaint uses the term "marketing" in the advertising sense; (4) conspiracy to fail to warn; (5) conspiracy to fraudulently suppress; and, (6) conspiracy to fraudulently misrepresent, to the extent that the complaint alleges that the defendants used advertising to neutralize the effect of federally mandated warning labels.

The following claims should not have been dismissed and are still in the case: (1) negligent and wanton design, manufacture and sale based on injuries that occurred within the two years prior to Carolyn Spain's death; (2) negligent and wanton marketing based on injuries that occurred within the two years prior to Carolyn Spain's death, to the extent that the complaint uses the term "marketing" in the sense of designing, manufacturing, and placing a product into commerce; (3) breach of implied warranty based on injuries that occurred within the four years prior to Carolyn Spain's death; and (4) conspiracy to fraudulently misrepresent the dangers of the defendants' cigarettes insofar as the complaint alleges that defendants, on or after the date two years prior to Carolyn Spain's death, made statements knowing their falsity, or with reckless disregard as to their truth or falsity, that involved the alleged addition of carcinogens and other harmful

ingredients that would not have been well known to the ordinary cigarette consumer with access to knowledge common to the community.

On remand the district court will have the authority to require Spain to file an amended complaint to clarify his allegations and shape up the claims for the next stage of the litigation. That might be a good idea.