[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11797
_____

D.C. Docket No. 1:05-cv-00831-WKW-WC

ARTEZ HAMMONDS,

Petitioner-Appellant,

versus

COMMISSIONER, Alabama
Department of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(April 28, 2016)

Before WILSON, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

For the reasons below, and pursuant to Alabama Rule of Appellate Procedure 18, we certify the following questions to the Alabama Supreme Court:

1. Whether corrected page 228 of the trial transcript in Artez Hammonds's trial for the capital murder of Marilyn Mitchell, attached hereto as Appendix A, was part of "the record that was before the [Alabama Supreme Court]" when it "adjudicated [Artez Hammonds's claim that the trial court erred in denying his motion for a mistrial following the prosecutor's reference to his decision not to testify] on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398 (2011).

2. If so, whether page 228 of the original trial transcript or corrected page 228 constitutes the official transcript of Hammonds's trial.

### BACKGROUND

Petitioner Artez Hammonds was convicted of capital murder and sentenced to death by an Alabama trial court on December 19, 1997. The facts of the crime for which he was convicted are thoroughly detailed in *Hammonds v. State*, 777 So. 2d 750 (Ala. Crim. App. 1999), *aff'd sub nom. Ex parte Hammonds*, 777 So. 2d 777 (Ala. 2000).

Relevant to this appeal, Hammonds invoked his Fifth Amendment right against self-incrimination during the guilt phase of his trial and elected not to testify. Concerned by the prosecutor's history of making improper arguments at trial, Hammonds's counsel filed a motion in limine prior to Hammonds's trial requesting that the prosecutor be instructed not to reference Hammonds's decision not to testify. The prosecutor objected, arguing that if he made improper comments at trial the court could sustain any objection from defense counsel or otherwise remedy the comments. The trial court, however, instructed the prosecutor that "arguments on the defendant's conduct and failure to testify" were "clearly improper" for trial. The trial court granted the motion in limine and ordered the prosecutor not to reference Hammonds's decision not to testify.

Undeterred by the trial judge's warning, the prosecutor violated the pretrial order and, while objecting to the cross-examination of a state witness, referenced Hammonds's decision not to testify:

> Q [Defense counsel]: Let's say there's a phone next to the wall on the floor. You wouldn't have thought anything at all about sitting down and picking up that phone and putting [it on a nightstand], would you?
>
> A: No.
>
> Q: Mr. Hammonds would have done the same thing, wouldn't he?
>
> MR. VALESKA [Prosecutor]: Objection. He can't testify—

3

THE COURT: Sustained.

MR. VALESKA:—what Mr. Hammonds would do.  Let him testify.

Hammonds's counsel asked to approach the bench and immediately moved for a mistrial on the ground that Valeska had improperly referenced Hammonds's decision not to testify.  After determining that the "him" to whom Valeska had referred was indeed Hammonds, the trial court denied Hammonds's motion for a mistrial but immediately issued a curative jury instruction on the matter.

In the original trial transcript, the curative instruction reads as follows:

> Ladies and gentlemen of the jury, there was a statement made by the Prosecution, an objection by the Defense, which was sustained.  The remark, and I'm not sure in which manner it was intended, but it basically said, let him testify.  It can be taken several ways, but such remarks are improper, and the jury should disregard that remark by Mr. Valeska.  Statements of counsel as I told you are not any evidence in this case and should not be used by you or considered by you as evidence.  Under the law the Defendant has the privilege to testify in his own behalf or not.  He cannot be compelled to testify against himself, and that no presumption of guilt or *innocence* of any kind should be drawn from his failure to testify.

(emphasis added).  Trial proceeded and Hammonds was convicted.

On direct appeal, Hammonds argued that the trial court erred in denying his motion for a mistrial.  *Hammonds*, 777 So. 2d at 763-65.  Relying on the jury instruction as reported in the original trial transcript, the Alabama Court of

4

Criminal Appeals disagreed and held that "[b]ecause of the trial judge's complete and timely instruction, the error created by the prosecutor's improper remark was vitiated so as to render the error harmless." *Id.* at 765.

Hammonds appealed to the Alabama Supreme Court, again arguing that the trial court erred in refusing to declare a mistrial after the "[l]et him testify" remark. But, on June 23, 2000, the Alabama Supreme Court upheld Hammonds's conviction. *Ex parte Hammonds*, 777 So. 2d 777. In doing so, it concluded that the trial court's curative instruction, as memorialized in the original trial transcript, "corrected any harm" caused by the prosecutor's improper remark. *Id.* at 778. Notably, three justices dissented, and one did so, in part, because the curative instruction failed to instruct the jury that it could not draw an adverse *inference* from Hammonds's decision not to testify:

> The curative instruction given by the trial court omits the required statement that the jury could not draw any *inference* from the defendant's failure to testify. . . . While the trial judge did caution the jury not to draw any "presumption of guilt or innocence" from the defendant's failure to testify, the defendant was more imperiled by the likelihood that the jury would draw an adverse *inference*, a much more common legal and mental operation. The prosecutor's comment was both flagrant and prejudicial, and the curative instruction was inadequate . . . .

*Id.* at 780 (Johnstone, J., dissenting).

5

Following the Alabama Supreme Court's decision, the judge who presided over Hammonds's trial asked Carla Woodall, the court reporter who transcribed the part of the transcript at issue, to review her notes and compare the audio recording of Hammonds's trial with the original trial transcript. Woodall did so and concluded that the original trial transcript erroneously substituted the word "innocence" for "inference" in the judge's curative instruction.

On June 27, 2000, four days after the Alabama Supreme Court upheld Hammonds's conviction, Woodall filed a "Certificate of Replacement Page To The Official Record On Appeal" in the Alabama circuit court, purporting to correct the error. On Woodall's corrected page 228, the curative instruction reads:

> Ladies and gentlemen of the jury, there was a statement made by the Prosecution, an objection by the Defense, which was sustained. The remark, and I'm not sure in which manner it was intended, but it basically said, let him testify. It can be taken several ways, but such remarks are improper, and the jury should disregard that remark by Mr. Valeska. Statements of counsel as I told you are not any evidence in this case and should not be used by you or considered by you as evidence. Under the law the Defendant has the privilege to testify in his own behalf or not. He cannot be compelled to testify against himself, and that no presumption of guilt or *inference* of any kind should be drawn from his failure to testify.

(emphasis added). Woodall forwarded a copy of the corrected page 228 to the Alabama Supreme Court and the Alabama Court of Criminal Appeals. And, on June 28, 2000, Woodall's Certificate of Replacement was docketed.

6

On July 7, 2000, Hammonds timely filed an application for rehearing with the Alabama Supreme Court requesting that it reconsider its opinion upholding his conviction. On September 1, 2000, the Alabama Supreme Court summarily denied his application without modifying its opinion or otherwise referencing the corrected jury instruction. The three dissenters also did not modify their dissents. And, on September 20, 2000, the Alabama Supreme Court and the Alabama Court of Criminal Appeals issued a Certificate of Judgment affirming Hammonds's conviction.

After Hammonds unsuccessfully pursued post-conviction relief in Alabama, he filed the 28 U.S.C. § 2254 habeas petition at issue here in the District Court for the Middle District of Alabama. In his petition, among other issues, Hammonds again complained that the trial court erred in failing to declare a mistrial following the prosecutor's "[l]et him testify" remark. The district court eventually denied Hammonds's habeas petition. Relying on the original jury instruction, the district court concluded that the Alabama Supreme Court's decision upholding Hammonds's conviction based, in part, on the original jury instruction was not an unreasonable application of federal law. The district court recognized that

> [T]he trial judge by no means offered a perfect curative instruction. Instead of telling the jury that they could not use Hammonds' silence to infer his guilt, he instructed jurors that they should draw neither an inference of guilt nor innocence from his silence. This is arguably incorrect because the jury was required to presume

7

Hammonds' innocence until the point in time when the
State had proven his guilt beyond a reasonable doubt.

But the district court concluded that the "innocence" portion of the instruction

amounted merely to a "semantic flaw" because the instruction overall conveyed to

the jury that they must disregard the prosecutor's remark, that the remark was not

evidence, and that Hammonds had a right not to testify.

On September 8, 2015, we granted Hammonds a certificate of appealability

to address whether Hammonds's rights under the Fifth and Fourteenth

Amendments were violated by two statements that the prosecutor made during the

guilt/innocence stage of trial, one of those being the prosecutor's reference to

Hammonds's decision not to testify.[1]    The parties completed their briefing on

January 12, 2016, and the case was set for oral argument on April 25, 2016.

In their briefing, the parties did not seriously dispute that the prosecutor's

"[l]et him testify" remark violated Hammonds's Fifth Amendment Right against

self-incrimination.  Nor could they.  *See Griffin v. California*, 380 U.S. 609, 85 S.

Ct. 1229 (1965).  Instead, the parties' arguments centered on whether the Alabama

---

[1] The other statement at issue is the prosecutor's reference, in his closing argument, to the fact that Hammonds was incarcerated at the time of his trial for a prior conviction for an attempted murder.  The record related to that statement is not in dispute.  As with the corrective instruction that appeared to have used the word "innocence" instead of "inference," Hammonds argues that the "prison" remark also violated his right to a presumption of innocence.

8

Supreme Court unreasonably applied federal law in holding that the curative jury instruction issued by the trial court rendered the *Griffin* error harmless.

On April 20, 2016, or five days before oral argument, Respondent-Appellee filed a motion to correct our record pursuant to Federal Rule of Appellate Procedure 10(e)[2] and swap out page 228 of the original trial transcript with Woodall's corrected page 228. Motion to Correct the Record Pursuant to Rule 10(e), Fed. R. App. P., *Hammonds v. Comm'r, Ala. Dep't Corr.*, No. 15-11797-P.

_____

[2] Federal Rule of Appellate Procedure 10(e) provides as follows:

**(e) Correction or Modification of the Record.**

> **(1)** If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly.

> **(2)** If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded:

>> **(A)** on stipulation of the parties;

>> **(B)** by the district court before or after the record has been forwarded; or

>> **(C)** by the court of appeals.

> **(3)** All other questions as to the form and content of the record must be presented to the court of appeals.

Two days later, Petitioner-Appellee opposed the motion on four grounds: first, that Rule 10(e) does not permit us to supplement a habeas record beyond the record presented to the district court; second, that the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388 (2011), precludes us from granting the motion because corrected page 228 was not before the Alabama Supreme Court when it upheld Hammonds's conviction; third, that the Commissioner should be estopped from enlarging the record; and fourth, that the corrected page 228 is unreliable and, in any event, a legal nullity. Motion to Strike and Otherwise Opposing Motion To Correct The Record Pursuant to Rule 10(e), Fed. R. App. P. at 3-16, *Hammonds v. Comm'r, Ala. Dep't Corr.*, No. 15-11797-P. Alternatively, Appellant asked that we certify the issue to the Alabama Supreme Court so that it may determine whether the corrected page 228 was in the record when that court ruled on the merits of Hammonds's *Griffin* claim. *Id.* at 16.

For the reasons below, we certify the issue to the Alabama Supreme Court.

## ANALYSIS

As an initial matter, there is no need to "correct" our record pursuant to Federal Rule of Appellate Procedure 10(e). Contrary to Appellee's contention, Woodall's corrected page 228 is already in the record. When the State filed the habeas record in the district court in 2005, it included the original page 228, corrected page 228, and Woodall's "Certificate of Replacement Page To The

10

Official Record On Appeal." Corrected page 228 is, therefore, already part of the record on appeal.

Whether we may rely on corrected page 228, however, is another matter. In *Cullen*, the Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 181, 131 S. Ct. at 1398. Here, the Alabama Supreme Court considered and rejected Hammonds's *Griffin*-error claim on the merits. *Ex parte Hammonds*, 777 So. 2d 777, 778 (Ala. 2000). Therefore, we can rely on corrected page 228 only if it was part of "the record . . . before" the Alabama Supreme Court when it upheld his conviction. *Cullen*, 563 U.S. at 181, 131 S. Ct. at 1398.

Under the Alabama Rules of Appellate Procedure, corrected page 228 was arguably part of the record before the Alabama Supreme Court. The Committee Comments to Alabama Rule of Appellate Procedure 36 explain that "[n]o provision is made for the issuance of a mandate as is the case with the federal system, and the certificate of judgment and opinion of the court constitute the necessary directions encompassed by the concept of a mandate." Ala. R. App. P. 36 cmt. In other words, it appears that both a certificate of judgment and an opinion must issue before a decision by the Alabama Supreme Court is final. "The issuance of the certificate of judgment is governed by Rule 41." *Id.* Rule 41, in turn, provides that "[i]n the [Alabama] Supreme Court, the timely filing of an

11

application for rehearing will stay the issuance of the certificate of judgment until disposition of the application unless otherwise ordered by the Court." Ala. R. App. P. 41(a)(2).

In this case, corrected page 228 was not before the Alabama Supreme Court when it published its opinion on June 23, 2000. But it was brought to the attention of the Alabama Supreme Court on June 27, 2000. Hammonds subsequently filed an application for rehearing on July 7, 2000, thereby staying the issuance of the certificate of judgment. Then, on September 1, 2000, with the corrected page 228 apparently on its docket, the Alabama Supreme Court overruled Hammonds's application for rehearing without modifying its initial opinion. The certificate of judgment issued nineteen days later, on September 20, 2000. If the Alabama Supreme Court's decision denying Hammonds's *Griffin* claim on the merits was not final until September 20, 2000, then corrected page 228 may have been part of the record before the Alabama Supreme Court when it ruled on the merits of Hammonds's *Griffin*-error claim.

On the other hand, at least two equally compelling reasons suggest that corrected page 228 was not "before" the court. *First*, as Hammonds points out, Alabama Rule of Appellate Procedure 10(g) governs supplements and corrections to criminal records on appeal. That rule, promulgated in 1991 and apparently unchanged since, specifies that "if any question arises as to whether the record

12

correctly reflects what occurred in the trial court and the parties cannot stipulate as to what action should be taken to supplement or correct the record," the party seeking to supplement the record must file a motion to do so with the trial court. Ala. R. App. P. 10(g). The trial court must then "enter such orders as are necessary to ensure that the record is complete and that it conforms to the truth." *Id.*

The rule does not indicate whether a trial court or a court reporter may *sua sponte* correct the record as Woodall attempted to do here. *See id.* It does, however, provide that an "*appellate court* may, on motion of a party or on its own initiative, order that a supplemental or corrected record be certified and transmitted to the appellate court if necessary to correct an omission or misstatement." *Id.* (emphasis added). Here, though, no party filed a motion to supplement the record pursuant to Rule 10(g), and no court, trial or appellate, entered an order correcting the record to include Woodall's corrected page 228.

*Second*, Alabama Rule of Appellate Procedure 40 governs applications for rehearings, and subdivision (e) provides as follows:

> **(e) Statement of Facts to Be Contained in Application for Rehearing.** If a court of appeals issues an opinion or an unpublished memorandum containing a statement of facts and a party applying for rehearing is not satisfied with that court's statement of the facts, the party applying for rehearing may present in the application for rehearing a proposed additional or corrected statement of facts or the applicant's own statement of facts. If the applicant is not satisfied with the facts stated in the main opinion or the unpublished memorandum of the court of appeals, but

13

the applicant is satisfied with the facts as stated in a dissent or a special writing by a judge or judges of the court of appeals, the applicant shall indicate those facts with which the applicant is in agreement and indicate in which part of the dissent or special writing the facts are found. If the applicant does not present in the application an additional or corrected statement of facts or the applicant's own statement of facts, it will be presumed that the applicant is satisfied with the facts as stated in the court of appeals' main opinion or unpublished memorandum.

Ala. R. App. P. 40(e). Rule 40 does not address a scenario in which a party opposing rehearing disagrees with the statement of facts in an opinion, and provides that, in fact, "[n]o brief opposing the application is required." Ala. R. App. P. 40(f).

Hammonds's rehearing application was filed on July 7, 2000. The state did not respond. A copy of Hammonds's application for rehearing is not in our record so we do not know whether Hammonds referenced corrected page 228. If he did not, the Alabama Supreme Court may have simply accepted its original statement of facts, including its reference to the jury instruction in the original trial transcript, as undisputed under Rule 40(e).

For these two reasons, corrected page 228 may not have been "before" the Alabama Supreme Court when it upheld Hammonds's conviction. If that is the case, we would be precluded from considering it now. *Cullen*, 563 U.S. at 181, 131 S. Ct. at 1398.

There is no clear answer as to whether, as a matter of Alabama law, corrected page 228 was in "the record . . . before" the Alabama Supreme Court when it adjudicated the merits of Hammonds's *Griffin*-error claim. *Id.* In these circumstances, we think it best to certify the question to the Alabama Supreme Court.

> Certification should never be automatic or unthinking. We use much judgment, restraint and discretion in certifying. In determining whether to exercise our discretion in favor of certification, we consider many factors. The most important are the closeness of the question and the existence of sufficient sources of state law to allow a principled rather than conjectural conclusion. But also to be considered is the degree to which considerations of comity are relevant. And we must also take into account practical limitations of the certification process.

*Royal Capital Dev., LLC v. Maryland Cas. Co.*, 659 F.3d 1050, 1055 (11th Cir. 2011) (alterations and quotation marks omitted) (quoting *State of Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274–75 (5th Cir. 1976)).[3]

Here, we are unable to draw a principled, rather than a conjectural conclusion as to whether corrected page 228 was (a) in the record under the Alabama Rules of Appellate Procedure; and (b) if so, whether corrected page 228 or the original page 228 is the official transcript of Hammonds's trial. Concerns of

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

15

comity point strongly towards certification—the Alabama Rules of Appellate Procedure are state-law rules promulgated by the Alabama Supreme Court pursuant to its power under the Alabama Constitution. Ala. Const. art. VI, § 150 ("The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts . . . ."); Ala. R. App. P. 1 cmt. (explaining that the Alabama Rules of Appellate Procedure were promulgated pursuant to the Alabama Supreme Court's constitutional power to promulgate rules).

Rather than speculate as to whether the Alabama Supreme Court would conclude that corrected page 228 was part of the record under state law, we think it appropriate to certify the question to the Alabama Supreme Court, particularly since this issue could arise again in other cases. *Cf. Escareno v. Noltina Crucible & Refractory Corp.*, 139 F.3d 1456, 1460 (11th Cir. 1998) ("Because this case involves an unsettled question of Georgia law, we would rather certify the question of the proper interpretation of § 15–9–31(2) to the Georgia Supreme Court than speculate as to how the Georgia courts would resolve the issue."). And, because our review must start and end with only "the record . . . before" the Alabama Supreme Court when it upheld Hammonds's conviction, *Cullen*, 563 U.S. at 181, 131 S. Ct. at 1398, the information we seek is critical to our analysis of Hammonds's § 2254 petition.

16

## CONCLUSION

For the reasons stated above, we certify the following questions to the Alabama Supreme Court pursuant to Alabama Rule of Appellate Procedure 18:

1. WHETHER CORRECTED PAGE 228 OF THE TRIAL TRANSCRIPT IN ARTEZ HAMMONDS'S TRIAL FOR THE CAPITAL MURDER OF MARILYN MITCHELL, ATTACHED HERETO AS APPENDIX A, WAS PART OF "THE RECORD THAT WAS BEFORE THE [ALABAMA SUPREME COURT]" WHEN IT "ADJUDICATED [ARTEZ HAMMONDS'S CLAIM THAT THE TRIAL COURT ERRED IN DENYING HIS MOTION FOR A MISTRIAL FOLLOWING THE PROSECUTOR'S REFERENCE TO HIS DECISION NOT TO TESTIFY] ON THE MERITS." *CULLEN V. PINHOLSTER*, 563 U.S. 170, 181, 131 S. CT. 1388, 1398 (2011).

2. IF SO, WHETHER PAGE 228 OF THE ORIGINAL TRIAL TRANSCRIPT OR CORRECTED PAGE 228 CONSTITUTES THE OFFICIAL TRANSCRIPT OF HAMMONDS'S TRIAL.

As in other cases in which we have certified questions to the Alabama Supreme Court, we note that "[o]ur phrasing of the question[s] is not intended to restrict the scope or inquiry by the Supreme Court of Alabama." *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1308 (11th Cir. 2001), *certified question answered sub nom. Tillman v. R.J. Reynolds Tobacco Co.*, 871 So. 2d 28 (Ala. 2003).

17

The particular phrasing used in the certified question[s] is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given . . . . That means, among other things, that if we have overlooked or mischaracterized any state law issues or inartfully stated any of the questions we have posed, we hope the Alabama Supreme Court will feel free to make the necessary corrections.

*Id.* (quoting *Spain v. Brown & Williamson*, 230 F.3d 1300, 1312 (11th Cir. 2000)).

The entire record, including the briefs of the parties, is transmitted herewith.

**QUESTIONS CERTIFIED.**

# APPENDIX A

IN THE CIRCUIT COURT OF HOUSTON COUNTY

STATE OF ALABAMA

STATE OF ALABAMA,                    *
                                     *
v.                                   *          Case No. CC-96-712
                                     *
ARTEZ HAMMONDS,                      *
                                     *
          Defendant.                 *

CERTIFICATE OF REPLACEMENT PAGE
TO THE OFFICIAL RECORD ON APPEAL

Comes now, Carla H. Woodall, Special Roving Court Reporter for the Twentieth Judical Circuit of the State of Alabama, and makes known the following corrected page, Page 228, is to be inserted in place of the existing Page 228 of the Official Record on Appeal.  The reason for the correction is due to a review of my stenographic notes as well as the audio cassette tape of the trial proceedings in question.  This review was performed at the request of The Honorable Larry K. Anderson, presiding judge in the above-styled and numbered cause.

On Page 228, Line 20, the word "innoncence" has been corrected to read "inference" to reflect the correct statement made by The Honorable Larry K. Anderson as proven by said review of the audio cassette tape.  This is the only correction made to this page.

19

2

Copies of corrected page, Page 228, are being forwarded to:

1. Supreme Court of Alabama
2. Court of Criminal Appeals, State of Alabama
3. Bill Pryor, Attorney General, State of Alabama
4. Doug Valeska, Houston County District Attorney
5. Charles D. Decker, Esquire
6. Artez Hammonds, Defendant
7. Judy Byrd, Houston County Circuit Clerk
8. Honorable Larry K. Anderson, Presiding Judge, Twentieth Judical Circuit

Witnessed my hand, this the 27th day of June, 2000.

_Carla H. Woodall_
Carla H. Woodall
Special Roving Court Reporter
Twentieth Judicial Circuit

228

proceedings were held in open court:)

THE COURT:  Ladies and gentlemen of the jury, there was a statement made by the Prosecution, an objection by the Defense, which was sustained.  The remark, and I'm not sure in which manner it was intended, but it basically said, let him testify.  It can be taken several ways, but such remarks are improper, and the jury should disregard that remark by Mr. Valeska.  Statements of counsel as I told you are not any evidence in this case and should not be used by you or considered by you as evidence.  Under the law the Defendant has the privilege to testify in his own behalf or not.  He cannot be compelled to testify against himself, and that no presumption of guilt or inference of any kind should be drawn from his failure to testify.

Attorneys approach.

(At which time the following proceedings were held at the bench